MORGAN, SEELIG & CO. v. E. BEMENT & SONS.

Decided December 12, 1900.

**1. Cross-Examination—Abandoned Answer.**

It was not error to permit plaintiffs' counsel to use an abandoned sworn answer of defendant as a basis for cross-examining him.

**2. Plea of Privilege.**

Suit brought in M. County on notes overdue by their terms and payable in that county if not paid by maturity, against defendants residing in and pleading the privilege of being sued in N. County, such plea being based on the fact that by reason of an extension of time the notes were not due and therefore not payable in M. County when suit was brought, was maintainable in the latter county, where the notes fell due—the time of extension having expired—before the trial and before the filing of plaintiffs' supplemental petition replying to the plea of privilege, the costs prior to jurisdiction attaching being charged to plaintiffs.

**3. Jury—Uncontradicted Testimony.**

The jury were not bound to accept unqualifiedly the testimony of interested defendants on a question of value, though it was uncontradicted.

APPEAL from McLennan, Nineteenth District. Tried below before Hon. MARSHALL SURRATT.

*D. H. Hardy* and *C. W. Croft,* for appellants.

*H. A. Atkinson,* for appellees.

COLLARD, ASSOCIATE JUSTICE.—This suit was filed by appellees, E. Bement & Sons, a private corporation, against Morgan, Seelig & Co., a firm composed of W. M. Morgan, W. J. Seelig, and W. B. Walker, residing in Navarro County, Texas, on two promissory notes of defendant executed on the 7th day of August, 1895, each for $440.83, payable at Corsicana, Texas, due respectively February 1, 1896, and March 1, 1896, to bear 8 per cent interest per annum from November 19, 1895, and stipulating, if the notes were not paid at maturity, to become due and payable at Waco, Texas; and further providing that if the notes were placed in the hands of an attorney for collection, they promised to pay 10 per cent additional on the full amount as attorney's fees.

Defendants all resided and yet reside in Corsicana. September 25, 1896, defendants filed a plea of non est factum and plea to the venue, claiming their residence in Navarro County.

Plaintiff filed supplemental petition October 6, 1896, claiming that the notes were then due and unpaid, and that the jurisdiction properly belonged to McLennan County by the terms of the notes, and also that the set-off of $236 set up by defendants had already been adjusted and settled by the parties by return of buggies mentioned in the account attached to the answer, and an allowance made to them on their account which is attached to pleading marked "Exhibit A." Plaintiff then admits as a credit on the notes sued on $101 paid thereon, less $79 paid by plaintiff as freight on goods, viz., that in a settlement made between the parties, the sum of $101 was allowed, but that

plaintiffs, at the request and for the benefit of defendants, paid $79 for freight charges on implements shipped by plaintiffs to defendants about November 14, 1895, leaving the amount of credit to be allowed on the notes the sum of $22. And in response to defendants' answer setting up certain repairs, plaintiff avers that about June 28, 1895, the parties made a contract in which it was stipulated in writing by plaintiff "We positively pay no repair bills," which was agreed to by defendants, whereupon plaintiffs say that none of the items for repairs mentioned in defendants' answer should be allowed. The statement of accounts mentioned shows a balance due by defendants of $1009.87.

Defendants filed amended original answer March 29, 1897, setting up again the plea of privilege, showing defendants' residence to be in Navarro County, Texas, at the time suit was brought and since, and that they did not promise to pay the notes in McLennan County, and that the stipulation to that effect in the notes was added after the execution of the notes without their authority; and if such stipulation was made the notes had not matured at the time of filing the suit, for they say that on August 9, 1896, when the notes were executed, plaintiffs' agent, W. O. Brown, executed and delivered to defendants their agreement in writing, that if defendants failed to sell as much as two-thirds of the car of buggies (referring to the buggies for which the notes were given) by January 1, 1896, and are unable out of the proceeds of said buggies to pay off said notes at maturity,—meaning on February 1 and March 1, 1896,—they, plaintiffs, agreed to extend the maturity of the notes to the extent necessary to enable defendants to dispose of enough buggies to pay off the notes in full; and they further say that on January 1, 1896, at the date of filing this suit, they had not disposed of nor sold two-thirds of said car load of buggies, and were not able, out of the proceeds of the sale of the buggies, to pay off the notes at maturity, and so notified plaintiffs when they extended the time of payment till the fall of 1896; that such extension was necessary for a compliance with the agreement, and at the date of the filing of this suit they were not able to pay the notes out of proceeds of the sale of the buggies, and they say that the notes were not mature at the time suit was brought at Waco, and the court has no jurisdiction of the persons of defendants. This answer denying jurisdiction is sworn to.

After demurrer and general denial, defendants plead non est factum to the notes, that the provision in the notes making them payable in Waco was erased from the form of the notes before they were executed, and that such provision has been added to them since their execution and without their knowledge or consent. This plea is also sworn to.

Defendants further answer that about the 1st of January, 1896, they adjusted the debt claimed by plaintiffs for the car of buggies evidenced by the notes, and it was then agreed that defendants should return to plaintiffs at Waco the following to be credited on the notes, to wit: one No. 74 driving wagon, $62; one No. 13 buggy top, No. 7, $47; one No. 2½ buggy top No. 7, 47; two No. 3 buggy tops No. 7, 93; total, $249;

which said sum of $249 was then agreed to be credited on the notes, "and the said implements were then and there shipped and delivered to plaintiffs," in accord with the agreement.

And defendants further answer that plaintiffs then and there agreed that because of defects in other vehicles not redelivered, plaintiffs would allow $350 in damages for noncompliance with plaintiffs' warranty, as a rebate to be credited on the notes, "in this manner in substance, to wit, that is to say, the defendants were then and there indebted to plaintiffs in open account for other goods in the sum of $231.05, and account $5, and back freight charges amounting to $12.95; total open account to plaintiffs, $249. Further alleged that it was agreed that this sum of $249 due plaintiffs should be deducted from the allowance by plaintiffs, to wit, $249 for returned goods and $350 rebate of price, leaving an additional sum of $101 over and above the said sum of $249 for return goods to be credited on the said notes sued on, and so defendants are entitled to a credit of $350 on said notes."

Defendants plead that the buggies were sold under written warranty that they were well made, of good material, by skilled workmen. Defendants then set up that plaintiffs sold to them at divers dates between August 1, 1895, and January 1, 1896, on same representations and warranties, certain farming implements, consisting of plows, cultivators, and other farming implements mentioned for $1029, as itemized in "Exhibit A" attached, all under written warranty, the goods to be as good as any made at the prices charged, and then set up failure of warranty because the goods were of inferior material and workmanship, and not as represented, and that they were only worth 50 per cent of the prices charged, claiming damages at 50 per cent of the prices paid, that is, $514.55. The "Exhibit A" attached to this part of the answer covers several printed pages of the transcript, listing the articles and prices paid for them, and claiming exactly one-half of 50 per cent rebate of the cost price on each article.

Plaintiffs filed a supplemental petition October 2, 1896, claiming that if the notes were not due when suit was filed, they had since matured, and thus the court of McLennan County had acquired jurisdiction.

The case was submitted to a jury on special issues, upon which verdict was returned and the court rendered judgment for plaintiffs for $954.28, from which defendants have appealed.

*Findings of Fact.*—We find the facts proved on the trial as follows: The notes were executed and delivered, as declared on, and another note for the same amount at the same time, which had been paid, and they had not been altered or changed as insisted by defendants' plea.

Defendants all resided in Navarro County, and they purchased a carload of buggies, for which they executed to plaintiffs the three notes, each for $440.84, the first due January 1, 1896, the second due February 18, 1896, and the third due March 3, 1896, all to be paid at the Corsicana National Bank, Corsicana, Texas, bearing interest at 8 per cent

per annum from November 19, 1895, and stipulating for 10 per cent on the full amount of each note if placed in the hands of an attorney for collection, and each stipulating, if not paid at maturity, to become then due and payable at Waco, Texas.

At the time the notes were executed, plaintiffs by their agent W. O. Brown, executed in writing an agreement of date August 9th, that if Morgan, Seelig & Co. fail to sell as much as two-thirds of the car of buggies for which the notes were given by January 1st, and are unable to pay all of the above notes at maturity, the plaintiffs agreed to extend such part as is necessary to enable them to dispose of enough buggies to pay the same in full.

Plaintiffs executed the following guaranty as to other goods, plows, etc., that "if properly handled they will do as good work as any tool made for the purpose in the United States. If it fails to operate as it should, we require the purchaser to give us written notice and time to have our representative make the necessary adjustment, and if we fail to make it work as it should, we will take it back and refund the price for the same." This provision was not complied with by the defendants purchasing. Defendant Morgan testified that the rebate filed with amended answer for other goods purchased for which they were charged and paid $1029.11½ were only worth one-half of the amount paid, and that the claim for the rebate was correct. This is the account of plaintiff for the other goods for which defendants paid the $1029.11½. The account is quite lengthy, consisting of many items, and the rebate claimed by defendants is exactly one-half of the price of each item, and they claim as a set-off $514.55¾ overpaid, which defendant Morgan testified was correct. And other witnesses testify that some of the goods—four plows and two cultivators—were worthless, but the amount charged purchasers for these goods which were returned to defendants is not shown except three plows at $35.

Defendants also offered in evidence the following, signed by Bement & Sons, by W. O. Brown, their manager:

"We hereby authorize Morgan, Seelig & Co. to ship us at Waco, Texas, 2 No. 3 buggies top, $93; 1 No. 2½ buggies No. 7 top, $47, f. o. b. Corsicana; 1 No. 13 buggies, top, $47; 1 No. 73 driving wagon, $62, which we agree to place to their credit when shipped, and also agree to allow them a rebate on other buggies sold to them of $101 in full settlement of all allowances on buggies." Signed "E. Bement & Sons, by W. O. Brown, Mgr." "Also agree to allow the extras for buggies which are in transit, gratis. E. B. & S."

It appears from the testimony that the parties agreed on a settlement as to credit to be allowed for returned buggies, $350. The verdict allowed $102.80 credit on farming implements. This would appear to require a credit on the note of $452.80, which, deducted from the amount due on the notes and attorney's fees, would reduce the amount due at the time the verdict was rendered to about $859.67. Judgment was for $954.28. But it seems that the rebate agreed on as to $350

was to be credited on an open account owing by defendants for other goods on another account in the sum of $231.05, and other small matters which made the amount $249, which would leave the amount of credit to be allowed on the notes $101 for returned buggies, the amount allowed by the verdict on this issue. The jury evidently construed Morgan's testimony in this way, and we believe they were correct. The verdict only allowed $203.80 in all, but the judgment credited on the amount due on the notes much more than this. The amount due on the notes, including the 10 per cent for attorney's fees at the date of the verdict, was $1313.75. The judgment was for $954.28, thus allowing a credit on the note amounting to $359.47.

*Opinion.*—The first assignment of error is that the court erred in permitting plaintiffs' attorney while cross-examining W. M. Morgan, witness, in the following manner: Plaintiffs' attorney took defendants' first original sworn answer, which had attached to it an exhibit, an account for repairing, blacksmithing, etc., which was plead by defendants as a set-off, amounting to $75, and asked the witness Morgan, one of the defendants, if that account was correct at the time his first original answer was filed, and over objections of defendants, required Morgan to answer: "Yes, that account was correct at that time." Then plaintiffs' attorney asked the witness Morgan if the goods were not worth any more than 50 per cent, as he had just testified, why he did not plead in the first original answer that they were not worth more at the time he filed his first original answer, and the court required the witness to answer over defendants' objection, as follows: "Because at that time I did not know the goods were so worthless. I had not sold a great many of them, but afterwards found out that they were almost worthless, at least, not worth more than half the amount I had to pay for them."

The objection made is that the testimony was likely to prejudice the jury against the defendants' plea on their account which was attached to their first amended original answer, and because the said answer had been abandoned by defendants, and the questions and answers could have no other effect than to prejudice the jury against the defense.

It was not error to use in evidence the abandoned answer of defendants, and especially when it was sworn to. Barrett v. Featherstone, 89 Texas, 567; Jordan v. Young, 56 S. W. Rep., 702. Nor was it error to use the abandoned answer as a basis of cross-examination of defendants filing the answer. He can not complain, as he was allowed the privilege of explaining, as he did. It was then for the jury to weigh the testimony.

The second assignment of error is that the court erred in overruling defendants' motion to enter judgment sustaining defendants' plea to the jurisdiction; because they say the case was submitted on special issues and the jury found that two-thirds of the buggies had not been sold, and defendants were not able to pay the notes when due out of the

proceeds of the sales, prior to April 30, 1896, for the reason that at the time this suit was filed the notes were not due by their terms, and they were payable in Corsicana when due, and had not become due, wherefore defendants' plea of privilege to be sued in the county of their residence was sustained, the findings of the jury showing that the court had not jurisdiction, as the notes were not due, and defendants resided in Navarro County.

It is true that when the suit was filed the notes were not due, but they became overdue before plaintiffs' supplemental petition was filed, and were long past due at the time of trial and were still unpaid, which facts, according to the terms of the notes, made them payable in Waco, McLennan County, where the suit was pending.

These facts conferred jurisdiction on the McLennan court. The costs accruing prior to the acquiring of jurisdiction of the McLennan court were assessed and charged to plaintiffs. This is all that defendants could ask and all that they were entitled to. Cox v. Reinhardt, 41 Texas, 594; Insurance Co. v. Camp, 64 Texas, 526.

There was no error in refusing to set aside the verdict upon the ground that the evidence showed, as insisted by defendants, that they were entitled to a credit of one-half the amount charged and paid for farming implements. It is true, Morgan testified that the goods were worth only one-half the amount paid for them, as did G. B. Walker, both of whom were parties to the suit, Walker having retired from the business after suit on the 20th day of December, 1899. Other witnesses who bought some of the plows and cultivators which they returned as worthless, testified to that fact, but their testimony applied only to a very small part of the goods, and only one of them stated the amount charged for his three plows, $35. So it appears that the contention that the proof showed by undisputed testimony that defendants were entitled to a credit on the notes of one-half the amount paid for farming implements, depends on the testimony of defendants. The jury were not bound to follow their testimony, as has often been decided in this State. We can not see but that the jury allowed as much as a credit on the claim for reimbursement as they should have allowed. This applies more forcibly to the judgment, which allowed much more credits than the verdict. As before seen in the statement, only $101 were shown to be a just credit on the notes for returned buggies, besides an additional amount as for imperfect plows and cultivators, and the verdict should not be set aside for so finding.

We find no error as assigned, and the judgment is affirmed.

*Affirmed.*