## JONES v. JONES.

(Court of Civil Appeals of Texas. San Antonio. March 27, 1912.)

1. INSURANCE (§ 663*)—ACTIONS—EVIDENCE.

In an action by the beneficiary of a life insurance policy, where the wife of the insured claimed she was entitled to the proceeds under an agreement with her husband, whereby he was to insure his life in consideration of her agreeing to the transfer of their homestead, the admission in evidence of the application of the wife as guardian of her minor son, wherein she listed another insurance policy as his property, was proper, where the application was considered in determining the amount of life insurance available for the wife and son of the deceased.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 663.*]

2. APPEAL AND ERROR (§ 1050*) — REVIEW—HARMLESS ERROR.

In an action by the beneficiary of a life insurance policy, where the wife of insured claimed that she was entitled to the proceeds owing to an agreement with the insured, the admission of her application as guardian of her minor son showing that another life insurance policy was scheduled as the property of her son was harmless, if erroneous; it appearing that other witnesses had testified as to the entire amount of insurance carried by the deceased.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4160, 4166; Dec. Dig. § 1050.*]

3. HUSBAND AND WIFE (§ 249*)—COMMUNITY ESTATE—WHAT CONSTITUTES.

An insurance policy on the life of the husband is no part of the community estate of a husband and wife.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 887, 889–892; Dec. Dig. § 249.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

4. HUSBAND AND WIFE (§ 249*)—COMMUNITY ESTATE—CLAIMS OF WIFE.

A wife cannot claim the proceeds of an insurance policy on the life of her. husband, even though the premium be paid out of their community estate, unless the payments are made with intent to defraud her.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 887, 889–892; Dec. Dig. § 249.*]

5. INSURANCE (§ 665*)—ACTIONS—EVIDENCE.

In an action where the wife of the insured contested the right of a beneficiary to the proceeds of a policy, the premium of which had been paid out of the community estate of the husband and wife, evidence *held* insufficient to show that such payments were a fraud on the wife.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1707–1728; Dec. Dig. § 665.*]

6. HUSBAND AND WIFE (§ 119*) — SEPARATE ESTATE OF WIFE.

The wife's signing of a deed to the marital homestead is a valuable consideration which will support an agreement on the part of the husband to convey the property purchased with the proceeds to the separate estate of the wife.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 424–429; Dec. Dig. § 119.*]

7. APPEAL AND ERROR (§ 219*) — PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW.

In an action tried to the court where no finding of fact was made on certain evidence, and there was no special request therefor, a party cannot on appeal complain of the court's failure to make such finding.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1315–1324; Dec. Dig. § 219.*]

8. TRIAL (§ 382*) — TRIAL BY COURT — EVIDENCE.

In an action tried to the court, he may discard the uncontradicted evidence of one witness, if deeming it unworthy of belief.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 898; Dec. Dig. § 382.*]

9. APPEAL AND ERROR (§ 1012*) — REVIEW—FINDINGS OF COURT.

A finding of fact by the trial court which disregards the uncontradicted evidence of one witness is binding on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3990–3992; Dec. Dig. § 1012.*]

10. APPEAL AND ERROR (§ 846*) — REVIEW—PROVINCE OF APPELLATE COURT.

In an action by the beneficiary of an insurance policy, where the proceeds were claimed by the wife of the insured, who alleged that the insured had agreed to make her the beneficiary of such policy in consideration of her signing a deed to their homestead, and the trial court failed to make a finding of fact on such issue, though making other particular findings, the appellate court can neither imply such finding nor determine the existence of the agreement for itself.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3347–3362, 3366; Dec. Dig. § 846.*]

11. INSURANCE (§ 585*)—RIGHT TO PROCEEDS.

In an action by the beneficiary of an insurance policy, where the wife of the insured claimed the proceeds under an alleged agreement that, in consideration of her signing a deed to their homestead, so that the insured could purchase incumbered property, he would take out sufficient insurance to pay off the incumbrance in case of his death, the carrying of insurance in favor of his estate and the only child of the marriage, who was coheir with the wife to the incumbered property, must be considered as a partial performance of his agreement, and hence where such insurance, together with that of which the wife was beneficiary, was more than the amount of the incumbrance, the wife could not, under this agreement, claim the proceeds of an insurance policy of which another was beneficiary.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1461–1468; Dec. Dig. § 585.*]

Appeal from District Court, Bexar County; J. L. Camp, Judge.

Action by T. H. Jones against the Merchants' Life Association of Burlington, Iowa, and Fay T. Jones. From a judgment for plaintiff, the last-named defendant appeals. Affirmed.

C. A. Davies, of San Antonio, for appellant. Webb & Goeth, of San Antonio, for appellee.

MOURSUND, J. On October 8, 1910, appellee filed this suit against the Merchants' Life Association of Burlington, Iowa, for $2,000, alleged to be due him upon a life insurance policy upon the life of Nat B. Jones, deceased, payable to Fay T. Jones, appellant, and joined appellant in the suit, alleging that she claimed some interest in the policy. Appellee alleged that on October 8, 1909, said Nat B. Jones by a written instrument transferred and assigned said policy to appellee, thereby substituting appellee for appellant as beneficiary. The Merchants' Life Insurance Company admitted the validity of the policy sued upon and paid the money into court.

Appellant, answering, alleged that she was entitled to receive the proceeds of the policy for the following reasons: (1) That the money used to pay for said policy was community property of said Nat B. Jones and appellant, who was his wife, and that such policy is the community property of Nat B. Jones, deceased, and appellant, and that any attempted change of beneficiary in said policy without appellant's consent was unlawful and fraudulent, and passed no title to her community interest in the policy or the proceeds thereof; and further that any stipulation in said policy authorizing a change of beneficiary, in so far as it attempted to dispose of appellant's community interest, was void. (2) That no change of beneficiary was authorized by the insurance company, nor was any such change made in the manner required by the provisions of the policy, and that after the death of Nat B. Jones it was too late for the insurance company to consent to the change of the beneficiary. (3) That the policy was procured and made payable to her as a beneficiary to procure her consent to selling and her signature to a deed conveying away her homestead, and her consent to invest the proceeds of the homestead in incumbered property, alleging that

she had refused to deed away her homestead and consent to the investment of the funds in property which would be greatly incumbered, and, in case of her husband's death, would leave her without funds to pay off the indebtedness upon the newly purchased property. That thereupon the deceased, Nat B. Jones, promised in case she would sign the deed to a valuable homestead, practically free from incumbrance, and consent to the investment of the proceeds, he would take out life insurance in her name as beneficiary, so that in case of his death she would have sufficient funds to meet the incumbrance upon the "Castle," the property to be purchased with the proceeds. "That, acting upon said promise, on September 30, 1908, she signed away her homestead rights, and on October 15, 1908, the policy in suit, as well as others, was issued with her as beneficiary, and delivered to her husband, Nat B. Jones, now deceased, who held the same for her benefit. That, by reason thereof, she had a vested right in the proceeds of said policy, and the proceeds thereof could not be diverted from her by any act, transfer, or change by Nat B. Jones, the insured, without her consent, and that she did not agree or in any manner consent to said attempted change of beneficiary made by the insured on October 8, 1909." Appellant further pleaded that no rules of the company or provisions in said policy as to the manner of the change of beneficiary therein were applicable to her, because she had a vested right in and to the proceeds of said policy by reason of having parted with her homestead upon promise of the procuring and issuance of said policy to her as beneficiary, for a valid and valuable consideration. The case was tried before the court on June 10, 1911, and judgment rendered for appellee for the entire proceeds of the policy, and that appellant take nothing by her cross-action and answer in said cause. Appellant has appealed the case to this court.

Upon request of appellant the court filed findings of fact and conclusions of law, as follows: "Findings of fact. First. I find that on the 15th day of October, 1908, Nat B. Jones, deceased, took out a policy of insurance upon his life in favor of Fay T. Jones, which policy contained the following provision: 'Provided, however, that the member shall have the right at any time with the consent of the president or secretary indorsed hereon to make a change in his beneficiary without requiring the consent of the beneficiary.' Second. That the deceased, Nat B. Jones, a short time before his death, filled out the certificate on the back of the insurance policy as follows: 'For Change of Beneficiary. I, Nat B. Jones, do hereby revoke the appointment of Fay T. Jones designated by me as beneficiary under certificate No. 23,230 in the Merchants' Life Association of Burlington, Iowa, and do hereby make, designate and appoint T. H.

Jones, my father, of Atlanta, Ga., as my beneficiary under the said certificate, and direct that the benefits thereunder be paid at my decease, to such beneficiary. Dated at San Antonio, Texas, this 9th day of October, 1909. Signature of Insured: Nat B. Jones. Thurel Hicks, Witness. O. M. Oppenheimer, Witness. The Merchants' Life Association, of Burlington, Iowa, hereby consents to the above change of beneficiary. —————, President. —————, Secretary.' Third. I find that Nat B. Jones came to his death on the 13th of November, 1909, thereafter. Fourth. I find that the Merchants' Life Association have always been ready, willing, and able to pay the $2,000 insurance, and would have paid the same but for a claim set up to it by the defendant Fay T. Jones, and after the institution of this suit the said Merchants' Life Association, as shown by its answer, which is on file under date of December 5, 1910, voluntarily deposited the said sum of $2,000 due under policy No. 23,230 upon the life of Nat B. Jones, deceased, in court, and disclaimed all interest therein or thereto. Fifth. I find that on the 13th day of November, 1909, Nat B. Jones carried life insurance to the amount of $16,500, as follows: $3,000, payable to his estate; $4,000, payable to the defendant Fay T. Jones; $7,500, payable to Nat B. Jones, the minor child of the deceased and defendant Fay T. Jones; and $2,000 as shown by the policy in controversy. Sixth. I find that the premiums on the entire sum of $16,500 carried upon the life of Nat B. Jones were paid out of the community funds of Nat B. Jones, deceased, and the defendant Fay T. Jones, and that the premium paid on the policy in dispute was $44. Seventh. I find that the father of Nat B. Jones, deceased, is about 81 years of age. Eighth. I find that at the time of the death of Nat B. Jones he left a piece of improved property known as the 'Castle' of the estimated value of $25,000, which was the community estate of himself and Fay T. Jones, and that the said 'Castle' property was incumbered at the time of his death for about $9,500, and after his death the said property, subject to said incumbrance, became the property in equal portions of defendant Fay T. Jones, and the minor, Nat B. Jones, Jr. Ninth. I find that he left insurance more than sufficient to pay off and discharge the incumbrance upon the 'Castle' property.

"Conclusions of law: (1) I conclude that the payment of the premium of $44 on policy No. 23,230 for $2,000, in favor of the aged father, was not an unlawful use of the community funds belonging to himself and the defendant Fay T. Jones, and that the same constituted no fraud upon the rights of said defendant Fay T. Jones. (2) I conclude that the defendant Fay T. Jones cannot question the sufficiency of the change of beneficiary in the policy of insurance, and that such matter could only be questioned by the Mer-

chants' Life Association of Burlington, Iowa. (3) I conclude that the Merchants' Life Association of Burlington, Iowa, having deposited the money in court, and disclaimed all interest therein, thereby waived the question of the sufficiency of change of beneficiary, and that the plaintiff, T. H. Jones, is the lawful beneficiary under the policy. (4) I conclude that the plaintiff, T. H. Jones, in any event, would be entitled to recover the $2,000 in controversy in view of the fact that $14,500 of life insurance that the deceased, Nat B. Jones, carried was for the benefit of the defendant Fay T. Jones and their minor son, Nat B. Jones, Jr., and the estate of Nat B. Jones."

[1, 2] Appellant, by her first assignment of error, complains of the admission in evidence of the application of appellant as guardian, and the copy of the order appointing her guardian of the estate of Nat B. Jones, a minor, showing that one of the policies in the Merchants' Life Association, issued at the same time with the policy being contested herein, had been scheduled by her as the property of her son, Nat B. Jones, Jr. The court, in allowing the bill of exceptions relating to said evidence, added the qualification that said testimony was considered by the court in estimating and finding the amount of life insurance available for the wife and son of the deceased, Nat B. Jones.

There can be no question that, under the pleadings of the parties, it was necessary to determine how much life insurance Nat B. Jones carried, and to whom it was payable. This was proved fully, without objection, by the evidence of the witnesses Samuel Belden and C. A. Davies. As the qualification to the bill of exceptions referred to in the first assignment of error shows that the evidence complained of was considered by the court in estimating and finding the amount of life insurance available for the wife and son of Nat B. Jones, we think there is no error shown by this assignment. Had there been no qualification, we do not think the evidence on a trial before the court was of such a prejudicial nature as to require a reversal.

[3-5] By her second assignment of error appellant contends that judgment should have been rendered for her for at least half of the policy, because the premiums on all policies had been paid out of the community estate. and the deceased had made $7,500 of his insurance payable to his son, $3,000 payable to his estate, and the $2,000 in controversy was attempted to be diverted to his father, which attempted diversion appellant alleges was in fraud of her rights. The proposition under this assignment is as follows: "Insurance left to the son, Nat B. Jones, Jr., became his separate property in which Fay T. Jones, appellant, had no interest, just as would the policy changed to T. H. Jones, and the insurance left the estate would be consumed by general indebtedness;

therefore the insurance to Nat B. Jones, Jr., and to T. H. Jones, amounting to $9,500, as against $4,000 left to wife, showed a diversion of community investments and judgment for at least one-half of this policy should have been for appellant." The trial court reached the conclusion that the payment of the $44 premium on the policy in question was not an unlawful use of the community funds, and that the same constituted no fraud upon the rights of the appellant.

The case of Rowlett v. Mitchell, 52 Tex. Civ. App. 589, 114 S. W. 846, was one in which a widow sued to recover one-half of the proceeds of a life insurance policy upon the life of her deceased husband, which was payable to his children by his first wife. The policy was taken out before his second marriage; but after such marriage he continued to pay the premiums thereon, and used about $73.20 of the community funds of the second marriage in paying the premiums due on such policy. The policy was for $1,000, and the entire community estate was only worth about $450. The trial court concluded as a matter of law that the facts did not show any fraud upon the rights of the wife, and that the children named in the policy were entitled to the proceeds thereof. The appellate court, in affirming the judgment, said: "We think the evidence was sufficient to support the conclusion reached by the trial court that the use by Shoulders of community funds of his second marriage to pay the premiums on the policy in favor of the children of his first marriage was not with intent to defraud appellant as the owner of an interest in such community funds. Therefore it must be said that in rendering the judgment complained of the trial court did not err; for the right of the husband to dispose of community funds is an absolute one, so long as it is not exercised for the purpose of defrauding the wife. Sayles' Ann. Civ. St. 1897, art. 2968; Stramler v. Coe, 15 Tex. 215; Martin v. McAllister, 94 Tex. 567, 63 S. W. 624." Further along in the opinion the court uses the following language: "The right of the husband to dispose of the community estate except for the purpose of defrauding his wife is an absolute one only while the marriage relationship exists. While that relationship continues, if not under a disability—as lunacy, for instance—he may expend their joint estate ever so unwisely, may squander it in "riotous living," or may give it away to objects meritorious or without merit, yet she cannot be heard to complain. It is only when he disposes of it for the purpose of defrauding her that the law will afford her relief."

Our Supreme Court, in the case of Martin v. McAllister, has held that when insurance is taken upon the life of the wife, payable to the husband, and premiums paid out of the community funds, the proceeds of the policy become the separate property of the

husband. The court stated that it saw no ground in the facts of the case to impeach the action of the husband as fraudulent towards his wife, and announced the doctrine that, as the proceeds of a policy upon the life of the husband or wife could not become the property of either during the lifetime of both of them, it cannot be held to be community property, and is therefore the separate property of the one to whom it is payable.

The case of Martin v. Moran, 11 Tex. Civ. App. 509, 32 S. W. 905, relied upon by appellant herein, is fully discussed in the case of Rowlett v. Mitchell, supra. The distinction therein made is applicable in this case. The court, in that case, appeared to take the view that an insurance policy is community property, which view is not in accord with the opinion of the Supreme Court in Martin v. McAllister, supra; but it will be noticed that after all the court relied strongly upon the proposition that the act of the husband was for the purpose of making the policy his separate property, and was therefore a disposition in fraud of the rights of the wife.

The policy itself not being community property, as is held by the Supreme Court, it seems clear that the only question which can arise in a case like the present is whether the husband, in expending the community funds, acted in fraud of the rights of the wife. The rule appears to be so understood by appellant's counsel, as shown by the assignment of error. The questions arise upon the application of the rule to different sets of facts. In this case it is shown that the deceased carried $16,500 insurance upon his life, of which $4,000 was payable to his wife, $7,500 to his son, $3,000 to his estate, and $2,000 to his father, who was 81 years old. He left a piece of improved property of the estimated value of $25,000, which was incumbered to the extent of $9,500. The amount of community funds expended for premium on the policy in question was $44. There is no evidence showing the amount of income of the deceased, nor the financial condition of his father. If deceased had given his father even twice or three times the amount of the premium on the insurance policy while both were alive, it could hardly be contended that it amounted to a fraud upon the wife. Or if he had given the amount of the premium each year for some charitable, or even some foolish and unnecessary, purpose, it would not be considered a fraud upon the wife. The sum expended for premium was so small that in itself it raises no presumption of fraud. The amount of insurance carried for his wife and son and for his estate shows that he was not disregarding his obligations to those having the first claim upon him. He owned a valuable equity in real estate, which together with his other insurance comprised such an estate for the benefit of his wife and child as would rebut any in-

ference that he might have tried to injure his wife. There are no acts proved to have been done by him evincing a desire to injure or defraud her, unless it be the act of changing the beneficiary on the two policies—one to his son and one to his father. If fraud can be inferred from such act alone, then no policy could be taken by the husband in favor of his children or any other relative, without the same being in fraud of his wife's rights.

We think the evidence sustains the trial court's first conclusion of law, and we therefore overrule the second assignment of error.

Appellant's third, fifth, and sixth assignments of error complain of the action of the court in rendering judgment for. appellee, because the policy in question was procured by Nat B. Jones, deceased, in consideration of appellant signing away her homestead rights and in pursuance of his agreement to take out sufficient insurance in her behalf to pay off the incumbrance on the "Castle," and thereby she acquired a vested right in such policy, and could not be deprived thereof without her consent.

[6] The signing of a deed to the homestead by the wife is a valuable consideration, which will support an agreement on the part of the husband that property purchased with the proceeds shall be her separate property. Drake v. Davidson, 28 Tex. Civ. App. 184, 66 S. W. 889; Blum v. Light, 81 Tex. 415, 16 S. W. 1090; McKinney v. McKinney, 87 S. W. 217.

In this case appellant pleaded that her husband agreed to take out life insurance payable to her in such an amount that she would have sufficient funds to pay off any claims against the "Castle" which might remain at his decease, and that the policy in question was taken out in fulfillment of such promise. The only evidence in regard to this matter is that of appellant, as follows: "I made a deed to that homestead after Mr. Jones promised that he would have his life insured sufficient to cover the indebtedness on the property that he wanted to buy. He wanted to sell the homestead and buy other property. I would not have signed the deed to the homestead without his promise to take out the insurance. It was about a month prior to my signing the deed when Mr. Jones made the promise to me that he would take out sufficient life insurance to cover the debt on the property he was buying. Prior to signing the deed he made application for the life insurance promised. He made the application for the life insurance promised. He made the application before I signed the deed. After we signed the deed, he told me that the policies were made out and he was in possession of them."

[7] The court made no finding on this evidence, nor was he requested to do so, nor is any complaint made because he failed to do so. In the case of Fitzhugh v. Franco Texas Land Company, 81 Tex. 314, 16 S. W.

1080, the court, in speaking of the duty of the court to file findings of fact and conclusions of law, says: "The duty is only devolved upon the judge when the request is made, and we are of the opinion that, when findings of fact have been put in writing and filed, a party should not be permitted to complain of a failure to find upon any particular issue without a special request therefor. In the absence of such a request, the presumption should be that the party complaining of the judgment has not been prejudiced by the court's omission. In this case there was no exception pointing out a failure to find upon any particular question of fact, nor was there a request for an additional finding." The following cases are to the same general effect: Tenzler v. Tyrrell, 32 Tex. Civ. App. 443, 75 S. W. 58; Lanier v. Foust, 81 Tex. 186, 16 S. W. 994; Tackaberry v. Bank, 85 Tex. 488, 22 S. W. 299; Veatch v. Gray, 41 Tex. Civ. App. 145, 91 S. W. 325; Smith v. Ernest, 46 Tex. Civ. App. 247, 102 S. W. 129; St. Louis, I. M. & S. Ry. Co. v. White, 103 S. W. 673, 678.

[8] Without an agreement being proven, these assignments of error have no merit, because based upon the existence of such an agreement. The court, as contended by appellee, may have refused to believe appellant, who was the only witness to such an agreement, and who was a deeply interested party. If he did not believe her, he had the right to discard her evidence, even though the same was uncontradicted. Cheatham v. Riddle, 12 Tex. 112; Railway v. Johnson, 23 Tex. Civ. App. 160, 55 S. W. 791; Life Insurance Co. v. Villeneuve, 29 Tex. Civ. App. 128, 68 S. W. 206; Railway Co. v. Runnels, 92 Tex. 307, 47 S. W. 971; Morgan v. Bement, 24 Tex. Civ. App. 564, 59 S. W. 907; G., H. & S. A. Ry. Co. v. Murray, 99 S. W. 148; Williams v. Burke, 108 S. W. 162.

[9, 10] If the court had found that no agreement had been proven, we would be bound by such finding. Autry v. Reasor, 102 Tex. 123, 113 S. W. 748. But he found neither for nor against its existence. The omission to find on the issue can hardly be considered to have been inadvertent, because he expressly makes a finding which shows a compliance with the agreement, if one existed. The evidence taken as true may have been considered insufficient to show anything except a mere promise, for it will be noted that appellant's testimony does not show that her husband promised to take out the insurance in consideration of her agreement to sign the deed to their homestead. She says she made the deed after he promised to have his life insured. She would not have signed had he not made the promise. He made application for the insurance before she signed the deed; after they signed he told her the papers were executed and in his possession. This evidence does not show that the deceased knew he was making a contract, that he was ever informed that his promise was exacted as a consideration, or that he was informed that appellant would not sign the deed unless he would make such promise.

[11] We do not think it within our province to find the existence of the agreement pleaded, or to infer such a vital finding by the lower court, even if the evidence was specific enough to show it, and would therefore be required to overrule these assignments. However, the lower court found that deceased had left insurance more than sufficient to pay off the incumbrance on the "Castle," and concluded that in any event plaintiff would be entitled to the money in controversy, because of the amount of insurance carried for the benefit of appellant, and of their son, and of his estate.

The court appeared to take the view that, even if appellant's testimony was true, the promise or agreement testified to by her was complied with, and appellant therefore could not be heard to object to the claim of the appellee to the money in controversy. If the finding and conclusion are correct, the assignments of error now being considered should be overruled on that ground.

It is undisputed, and the court found, that $7,500 of the insurance carried by deceased was payable to his son, Nat B. Jones, Jr.; that $4,000 was payable to appellant, and $3,000 to his estate; that the "Castle" property was subject to an incumbrance of $9,500, and subject to such incumbrance became the property of appellant and Nat B. Jones, Jr., each becoming the owner of one-half. Appellant did not testify that the insurance was promised to be made payable to her. The son's interest in the property was of the estimated value of $12,500 and was liable for half the indebtedness, viz., $4,750. There can be no doubt that, in order to prevent the sacrifice of his half of the valuable property, the guardian of his estate could pay off his half of the incumbrance, and thus require sale of the other half first to satisfy the remainder of the incumbrance. To pay off the other half of the incumbrance appellant would have the $4,000 insurance payable to her, and her interest in the policy payable to his estate, which together would be more than sufficient to pay off the incumbrance. However, she complains that there were other debts due by the estate, and therefore this insurance due the estate could not be made available for the purpose of paying off her half of the incumbrance. Appellant did not testify that her husband agreed to take out sufficient insurance to pay off the incumbrance and such other indebtedness as he might owe when he died, or owed at that time. The spirit of the agreement testified to would not have been complied with by taking the insurance payable to an outsider so that it could not be available for paying off the incumbrance; but we think, had he made it all payable to his estate, it

would have been a compliance with the promise testified to by her, and that she cannot complain that $3,000 was made payable to his estate. Not taking into consideration other indebtedness, she could, with the insurance accruing to her from her policies and the one payable to the estate, have paid off her half of the incumbrance. We sustain the conclusion of the trial court, and therefore overrule the third, fifth, and sixth assignments of error.

The fourth assignment of error complains of the action of the court in considering the insurance left to the son, in determining whether the deceased left sufficient insurance to pay off the incumbrance on the "Castle." What we have said disposes of this assignment of error, and it is overruled.

The judgment is affirmed.