ALSBURY et al. v. LINVILLE.   (No. 6245.)

(Court of Civil Appeals of Texas. San Antonio. June 11, 1919. On Motion for Rehearing, June 28, 1919.)

1. LANDLORD AND TENANT ⬤⟿132(2)—ABANDONMENT OF PREMISES — SUFFICIENCY OF EVIDENCE.

In tenant's action against landlords for entering rented premises and converting tenant's personal property, *held*, under the evidence, that landlords were warranted in believing that the premises had been abandoned.

2. EVIDENCE ⬤⟿590—WEIGHT OF EVIDENCE—TESTIMONY OF INTERESTED PARTIES—INCONSISTENCIES.

Court was warranted in discarding testimony of interested parties, where it contained inconsistencies, and where there were other facts in evidence justifying disbelief thereof.

3. LANDLORD AND TENANT ⬤⟿132(2)—ABANDONMENT OF PREMISES — SUFFICIENCY OF EVIDENCE.

In tenants' action against landlord for entering rented premises and converting tenants' personal property, evidence *held* to warrant finding that premises had been abandoned and that tenants' claim that they had not abandoned premises was an afterthought to bolster up a suit for damages.

4. LANDLORD AND TENANT ⬤⟿110(1)—ABANDONMENT OF PREMISES — POSSESSION BY LANDLORDS.

Landlords were authorized to take possession of premises upon abandonment thereof by tenants.

5. LANDLORD AND TENANT ⬤⟿161(2)—ABANDONMENT OF PREMISES—TENANTS' PERSONAL PROPERTY—DUTY OF LANDLORD.

Landlords, in taking possession of abandoned premises, are required to safely care for property left in premises by tenants.

6. LANDLORD AND TENANT ⬤⟿161(2)—ABANDONMENT OF PREMISES — CONVERSION OF TENANTS' PROPERTY.

Where landlords, upon abandonment of premises, retook possession and removed personal belongings of tenants found therein to their own home without intent to appropriate the same, and so held the property subject to tenants' order, they were not guilty of conversion of such belongings.

Appeal from District Court, Bexar County; J. T. Sluder, Judge.

Consolidated actions by Will Alsbury and others and by S. S. Markham and wife against F. E. Linville. Judgment for defendant, and plaintiffs appeal. Affirmed.

Chambers & Watson, of San Antonio, for appellants.

Mauermann & Hair, of San Antonio (Will Glover, of San Antonio, of counsel), for appellee.

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

MOURSUND, J. S. S. Markham and wife, Lena, sued F. E. Linville, alleging that the latter had unlawfully entered a residence rented by them from him, and removed therefrom personal property of the value of $419.30 and converted the same to his own use. They also sought to recover exemplary damages in the sum of $10,000.

William Alsbury also sued Linville, alleging that the latter had unlawfully entered his room in such residence which he had rented from S. S. Markham and wife, and converted to his own use certain wearing apparel.

The causes were consolidated by agreement, and, Mrs. Markham having in the meantime become the wife of Alsbury, the three filed an amended petition, making substantially the same allegations as in the separate petitions.

The answer on which defendant went to trial consisted of a general demurrer, a general denial, and plea of tender and abandonment.

Judgment was rendered for defendant.

The trial court's findings of fact and conclusions of law are as follows:

### "Findings of Fact.

"In this case I find: That in August, 1917, plaintiff S. S. Markham rented from defendant the property in controversy at the rental of $25 per month, payable monthly in advance. That plaintiff William Alsbury, accompanied by Mrs. S. S. Markham, went to the residence of defendant and rented such property furnished with furnishings of defendant, from Mrs. Linville, wife of defendant F. E. Linville, and that in making the rental contract Alsbury represented himself to be W. J. Markham and represented that Mrs. S. S. Markham, who was with him at that time, was his (Alsbury's) wife. That S. S. Markham and his wife occupied the premises until the latter part of March, 1918, during which time plaintiff Alsbury paid most of the monthly rental in the name of and taking receipts from defendant in the name of W. J. Markham. That during the life of said rental contract said Alsbury occupied the premises as a 'roomer,' paying $20 per month for a room with Markham and his wife. That in the latter part of March, 1918, plaintiff S. S. Markham abandoned the premises, joined the United States army, and at the trial of this case was reported to be in France. That defendant F. E. Linville nor his wife never knew S. S. Markham personally. That about the time S. S. Markham abandoned the premises he left a waiver of citation and service in the premises for his wife to procure from him a divorce, which was instituted in the Thirty-Seventh district court on or about that date. That on or about the 8th day of April, 1918, Mrs. S. S. Markham abandoned the premises and went, to Dallas, returning, however, from Dallas in about five days. That after S. S. Markham and his wife, Mrs. S. S. Markham, had abandoned the premises, the defendant resumed possession thereof for the purpose of renting it to other parties, locked up and nailed up the doors to prevent the plaintiffs from reoccupying the premises and to protect the property during its vacancy. That defendants found in the house of said rented premises, at the time they resumed possession thereof, some soiled and apparently abandoned personal clothing, which they took charge of and moved to their own residence, and which they assumed belonged to the plaintiffs herein, and they have cared for and kept that property in their possession since said date, and that it has been at all times subject to the orders of the plaintiffs, which the plaintiffs could have obtained from the defendant at any time by calling for same. That about 2 o'clock a. m. on or about April 9, 1918, the plaintiff William Alsbury, alias W. J. Markham, alias S. S. Markham, went to the residence of defendant and demanded that all of the clothing taken from the rented premises be returned to those premises, which the defendant refused to do, but offered to deliver it anywhere in town that he or the other owners of the property might designate; but he would not return it to the said abandoned premises. That neither William Alsbury, S. S. Markham, W. J. Markham, Mrs. S. S. Markham, nor Mrs. W. J. Markham nor Mrs. William Alsbury, nor either of them, had ever demanded possession of the premises, nor have ever demanded the clothing except as hereinabove stated. That all of said clothing was properly kept and tendered in open court upon the trial hereof to the plaintiffs. That in the early part of May, 1918, after plaintiff S. S. Markham was in the service of the United States army, plaintiff Mrs. S. S. Markham, alias Mrs. W. J. Markham, alias Mrs. William Alsbury, procured a divorce from S. S. Markham, and two days thereafter married plaintiff William Alsbury and they are still living together as husband and wife. That while plaintiff William Alsbury, alias W. J. Markham, alias S. S. Markham, was a 'roomer' in the premises in controversy, during the tenancy thereof there were other 'rumors' about the premises not satisfactory to this defendant. That defendant never converted said property nor any part thereof. That plaintiffs nor either of them suffered any damages whatsoever.

### "Conclusions of Law.

"I find as a matter of law that on abandonment of the premises the defendants had a right to resume possession and control of their premises; that the plaintiffs nor either of them were entitled to a repossession of the premises, and there being no conversion of the personal property, and the same being subject to plaintiffs' orders at all times, they have suffered no damages by reason thereof, either actual or exemplary, and judgment is therefore rendered for defendants."

There is a decided conflict in the evidence on most of the issues, but the findings of fact are not directly challenged, except that in the sixth assignment it is contended that the court erred "in his conclusions of fact and law in holding said premises had been abandoned by plaintiffs," as there was no evidence to support such a conclusion. The case is a peculiar one. The court finds that S. S. Markham rented the premises. The facts stated in the following sentences of the find-

ings of fact show that the premises were rented to Alsbury, who assumed the name of W. J. Markham and claimed that the wife of S. S. Markham was his wife. This would not show that S. S. Markham and his wife ever had any contract with the Linvilles, but that they held the premises as sublessees or assignees under Alsbury. The suit is predicated upon the theory that they rented from the Linvilles, and therefore the Linvilles owed them certain duties, and that Alsbury rented from the Markhams.

The house was rented by the month, and the month for which rent had been paid expired April 5, 1918. S. S. Markham had joined the army during the latter part of March. Alsbury and Mrs. Markham testified they did not intend to abandon the house. Before she left it, according to the testimony of Linville, Mrs. Linville had informed Mrs. Markham, believing her to be the wife of the man who rented the house, that she wanted the house; in other words, that she did not intend to rent it to them any longer. Alsbury testified he heard this conversation, and presumably Linville did, or else objection would have been made to his testimony. The conflict is sharp; but, as the court found against plaintiffs, the testimony which directly supports or tends to support his findings must be accepted as true. It may therefore be inferred that both Alsbury and Mrs. Markham knew that the Linvilles wanted possession and not rent. All trunks and suit cases had been removed from the house when the Linvilles entered the same. Alsbury said he had some suit cases in the house which had his initials on them, "J. A. W. or W. M. A."; but he forgot to sue for their value. In view of the fact that suit cases would not be apt to be overlooked in making a list of the articles, the court doubtless did not believe they had been left in the house. Mrs. Markham said Alsbury had a trunk and did not take it away at the time she took her trunk away. Alsbury denied that he owned a trunk. The court was authorized to find that he did have a trunk, and that he must have taken it away, as it was not there when the Linvilles entered the house. Linville said something concerning a disagreement between Alsbury and Mrs. Markham. When the conversation over the telephone occurred, Mrs. Markham was at a place on East Commerce street, and was sick. In that conversation Mrs. Linville asked her why the telephone in the rented premises had been disconnected, to which Mrs. Markham made no reply. Mrs. Linville asked her why she had left the house, and she said the neighbors bothered her and she wanted to be near a doctor. The court was also authorized to find that Mrs. Linville gave her to understand that rumors had come to her knowledge which made it undesirable for the tenancy to continue. Mrs. Linville called up again at the East Commerce street place, and was informed by a woman that Mrs. Markham had gone to Dallas, and that Mrs. Linville would not lose anything by those people; that she did not know where Bill was (meaning Alsbury); that he "has been acting up lately, but I will find him." The Linvilles tried to find Alsbury, under the name of Markham, but did not succeed. Alsbury testified that the telephone conversation occurred on April 6th. Mrs. Markham said she went to Dallas on the 6th or 7th. The Linvilles drove by the place on the 5th and there was no one at home; then they used the telephone and finally located Mrs. Markham on East Commerce street, and had the telephone conversation with her. Linville testified they did not move the things out of the house the day they first entered it and concluded it had been abandoned; that they came back the next day, or the day following, and packed up the things. He testified this was on the 9th, but perhaps it was on the 8th. Alsbury testified that on the night of April 8th, after he had had a little trouble at the club and got his shirt bloody, he went to the house, and found it nailed up, but pushed in and discovered that the things left there had been removed. Thereupon he made the visit to Linville's residence described in the findings of fact.

If Alsbury and Mrs. Markham have told the truth concerning what they left in the house, and Linville and his wife and Mrs. Mozier have testified truthfully concerning what they found, the house was entered by other parties and many things stolen, for there is a wide discrepancy in the testimony on this point.

[1-3] There can be no doubt that the Linvilles were fully warranted in believing that the premises had been abandoned. They received word from Mrs. Mozier, who resided near the place, that the tenants had gone, and then, investigated. Linville had a key to the house. Mrs. Markham knew this, as it had been used before, when Linville had certain repairs made. It is true that Mrs. Markham and Alsbury testified that they did not intend to abandon the premises, but, as they were interested parties, the court was authorized to discard their testimony on this point. Jones v. Jones, 146 S. W. 265. Besides, there were inconsistencies in their testimony, and other facts in evidence which justified a disbelief of their testimony. The only circumstance tending to show that there had been no abandonment was that certain things had been left in the house. The court's finding concerning what had been left there is not challenged. In view of all the testimony, we conclude that the court was warranted in finding that the premises had been abandoned and that the parties did not expect to reside longer therein, or hold the same as tenants, even though they may

not have intended to abandon all of the things they left there; and that the claim that they had not abandoned the same was an afterthought to bolster up a suit for damages.

[4-6] There having been such an abandonment, the Linvilles were authorized to take possession, and it became their duty to safely care for such property as they found there. If the taking possession of the premises was not wrongful, it seems clear that what was done with respect to the things found on the premises, as found by the court, did not constitute conversion. Tiffany on Landlord & Tenant, § 255, pp. 1672, 1673. The Linvilles were unable to locate the owners; by taking possession of the premises they made themselves responsible for the property left there; they did not intend to appropriate same, and only held it for the owners, being willing to deliver possession at the place where they safely kept such property or any place demanded by the owners. They told Mrs. Mozier that if any of the parties came back to tell them the things were at Linvilles' for them.

Of course, there was no proof of actual damages such as are recoverable for eviction, but the question whether there was an eviction is important, as we view it, on the issue whether there was a conversion of the property removed from the premises.

There was no direct finding on the issue whether the Linvilles declined to rent for another month and demanded possession. We have found such to be the fact because it is an important circumstance tending to support the finding that the removal of the trunks was intended as an abandonment. There is authority to the effect that possession, obtained as was that in this case, after expiration of the term, is not wrongful. Randall v. Rosenthal, 31 S. W. 822; Wilson v. Moore, 57 Tex. Civ. App. 418, 122 S. W. 577; Cooley on Torts (3d Ed.) p. 668; Tiffany on Landlord & Tenant, §§ 206, 208.

We base our judgment of affirmance, however, on the findings directly made by the court, being of the opinion that the finding of abandonment is supported by the evidence, and that therefore the conclusions of law are correct.

All assignments of error are overruled, and the judgment is affirmed.

## On Motion for Rehearing.

It is true that the Linvilles testified that Mrs. Markham said she did not know where Markham was, but he was still wanting to keep the house; but Linville testified that in the same conversation she was told by Mrs. Linville that the Linvilles wanted the house and not rent. The court was authorized to find that there was a demand for possession and no refusal to vacate. Some stress is laid on the proposition that Linville nailed up the house, and his reasons for doing so. In this connection, and as furnishing a reason for nailing up the house upon this occasion when he had not done so theretofore when it was vacant, it must be borne in mind that there had been rumors concerning the occupants of the premises, and that he testified that his purpose was to prevent the house from being used "as a rendezvous for various people coming out there." In spite of the fact that it was nailed shut, Alsbury got in, but did not continue to hold possession. Of course, his closing up the house kept out the plaintiffs as well as others; but he stated that his purpose was to keep people out, and not specially to keep these people out as he did not know where they were. It is true he did not want them to enter the house or permit others to enter it, but such desire on his part was not inconsistent with the belief that they had acquiesced in the demand for possession, and did not expect or intend to continue to pay rent.

Appellants vigorously challenge our statement that Markham had joined the army during the latter part of March. This statement was taken from the findings of fact of the trial court, and the correctness of the particular finding was not challenged by any assignment of error. The court doubtless based that finding on the fact that Mrs. Markham filed suit for divorce on March 19, 1918, and Markham on that very day signed a waiver of service which was found in the house when the Linvilles entered it. Mrs. Markham explained this by stating that she had spoken to attorneys about filing the suit, but did not know it was filed, and that afterwards she and her husband made up and lived together until about three or four days after she returned from Dallas; that she did not tell her attorneys about living with her husband again, and the divorce was granted in the suit they had filed on March 19th. She also testified, when recalled by plaintiffs, that she was certain that Markham left things there "when he moved." This is an admission that he moved, and certainly if he left things there he moved before the 8th or 9th of April when the Linvilles entered the premises and took everything out. His removal before she went to Dallas is important as a circumstance to be considered with other circumstances tending to show that the conditions were such at the time she went to Dallas as rendered it highly probable that the intention of the parties was to abandon the premises and not to continue to hold the same as tenants. In this connection, it is also worthy of notice that she told Mrs. Linville she did not know where Markham was, and that the woman at the East Commerce street place never mentioned him, but had much to say concerning Alsbury. If the three of them lived together at the Linville place up to the time Mrs. Markham went to Dallas, it is strange that she told Mrs. Linville she did not know where

her husband was, and that she should testify that he had moved, leaving certain things. The testimony indicates that she was not living at the place at the time the telephone conversation occurred. Surely, if she was merely making a call on friends, there would be no occasion to tell Mrs. Linville, in answer to the question why she left the house, that the neighbors bothered her and she wanted to be near a doctor. Neither she nor Alsbury explained why she was at the East Commerce street place. The testimony as a whole indicates that things were not going smoothy; that there had been some friction between Mrs. Markham and Alsbury; that relations with the neighbors had also become unpleasant; that rumors had been circulated concerning plaintiffs. The demand for possession was added to these things. Plaintiffs did not go to the Linvilles and try to persuade them that the rumors were unfounded and get them to withdraw their demand for possession. Instead, they made such substantial progress towards moving all their goods as to raise the strongest kind of an inference that they had decided it was advisable to remove from the premises.

In weighing the testimony it must be borne in mind that the trial court's findings are not to be measured by taking as true the testimony of plaintiffs and excerpts from defendant's testimony which, when not considered in connection with their other testimony, tend to support plaintiffs' theory. There are facts in evidence which discredit plaintiffs as well as inconsistencies and improbable statements in their testimony. The court had a right to discard their testimony. We must take the testimony which supports his conclusions, and when this is done we believe they cannot be held to be unsupported by evidence.

The motion for rehearing is overruled.