**CONTINENTAL NAT. BANK OF FORT WORTH v. SMITH et al.   (No. 788–4448.)**

(Commission of Appeals of Texas, Section A. June 16, 1926.)

**1. Interpleader ☞35—Bank, disobeying order appointing receiver, requiring it to turn funds over to him, held not entitled to attorney's fees arising from subsequent interpleader proceedings respecting funds.**

Where bank refused demand of receiver, appointed by court in proceeding to which it was party, to turn over funds to receiver, because it had been informed by attorneys that they were going to file suit for injunction thereafter, attorney's fees in subsequent interpleader proceedings involving funds *held* not allowable to bank.

**2. Interpleader ☞8(1).**

Demand of receiver to impound fund in bank's hands was demand of court, and he was not a "claimant" in interpleader sense.

**3. Interpleader ☞35—Bank held not entitled to attorney's fees, in interpleader's suit, where rights could have been determined in prior litigation.**

Where bank was originally party defendant in suit to appoint receiver for trust company and could have secured determination of every fact involved in controversy, so that interpleader's suit in further proceedings was not necessary, bank *held* not entitled to attorney's fees in latter suit.

**4. Interpleader ☞1.**

Origin and continued existence of interpleader, which is equity device, rests in necessity of avoiding unjust consequences and to extricate blameless from unconscionable positions.

**5. Interpleader ☞35.**

Attorney's fees are allowed to pay representatives of true stakeholder only by way of court costs.

**6. Interpleader ☞35.**

Bank, if placed in position of stakeholder, and paying portion of sum to its attorneys without turning same over to court for determining proper allowance, *held* not entitled to allowance thereof as attorney's fees.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Suit by J. C. Smith and others against the Ocean Oil & Refining Company, wherein the Continental National Bank of Fort Worth was interpleaded. A judgment denying interpleader attorney's fees was affirmed by the Court of Civil Appeals (273 S. W. 657), and interpleader brings error. Affirmed.

Thompson, Barwise & Wharton, of Fort Worth, for plaintiff in error.

Baker & Weatherred and Critz & Woodward, all of Coleman, for defendants in error.

NICKELS, J. Prior to, and upon, the 15th day of March, 1923, the Ocean Oil & Refining Company, a so-called joint-stock association or common-law trust, had on deposit with the Continental National Bank $8,830.82. It owned certain oil producing and production properties in Eastland county. It had (about) 2,500 "stockholders" residing in various parts of the world; the exact places of residence of many of them were unknown, but some of them resided in Coleman county. The legal title to its properties was vested in three trustees. Joe Z. Brooks and R. Brooks (each of whom resided in Coleman county) and M. S. Asbell (who resided in El Paso county) were elected trustees at the stockholders' meeting on March 5, 1923, and immediately qualified. R. H. Manning, H. L. Douglas, and F. W. Manning were the "old" trustees, and they proposed to retain title to and control of the properties and to manage the business of the company despite the election of Brooks, Brooks, and Asbell, and their demand for control.

With that situation in mind, Smith, Martin, Sadler, and Zimmerman, who resided in Coleman county and who were "stockholders," on March 15, 1923, filed suit in the district court of Coleman county and therein named each of the "old" trustees and each of the "new" ones as defendants along with a large number of "stockholders" and the Continental National Bank. The internal dissensions and consequent peril were alleged as the bases of prayers for injunction, receivership, and a winding up of the partnership's affairs. The sufficiency of the petition, jurisdictional questions, and validity of the orders to be mentioned were settled on a former appeal. Woodward v. Smith (Tex. Civ. App.) 253 S. W. 847.

Upon presentation of the petition, March 15, 1923, orders were entered appointing James Amyx receiver to take charge of, hold, and manage all properties, etc., belonging to the company and restraining all others from interfering therewith and restraining the bank from paying out the money (or any part of the money) represented by the deposit mentioned, except to Amyx. Notice of orders was served upon the bank in the forenoon of March 20, 1923, and on that day (also in the forenoon) Amyx appeared at the bank, presented to it certified copies of the orders and of the bond and oath by which he had qualified, and demanded payment of the "deposit." The bank requested time for consultation with its attorneys. This was granted, the consultation was held, and the attorneys advised existence of apparent regularity in the proceedings and duty of the bank to comply with the demand. This all happened before the expiration of the banking day and Amyx thereafter, and before the end of banking hours, again demanded payment. Pay-

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ment was declined upon the ground that some Fort Worth lawyers had, during the day, told the bank's officers that they would file a suit (during the next day) in a district court of Tarrant county and seek an order restraining payment to Amyx. That suit was filed March 21, 1923, in behalf of Fellows and Meeker, against the bank and against Amyx, and, so far as the record shows, the only relief prayed was an order restraining the bank from paying over the money to Amyx, receiver. Such an order was entered, and notice thereof given the bank, on March 21, 1923. Subsequently, upon the motion of Amyx, the order was vacated and the suit dismissed. Notice of appeal was given, but the appeal was not perfected.

The bank, in due time and on April 26, 1923, filed its answer in the Coleman county suit. This pleading recited the fact of service (March 20th) of the orders of March 15th and the service (March 21st) of the order of the Tarrant county district court, and averred absence of demand for payment by Amyx prior to the latter service and its subsequent position of a party holding a fund adversely claimed by two or more persons. The answer contained allegations that the bank was advised that Brooks, Brooks, and Asbell claimed to be trustees; that Manning, Douglas, and Manning also claimed to be trustees; that each group claimed right to have the money on deposit with the bank; and that all of them were parties defendant. Another allegation was that Fellows and Meeker were "the parties who as plaintiffs instituted" the suit in Tarrant county. The prayer was that an order be entered "citing each of the alleged trustees, as well as J. R. Meeker and H. A. Fellows, * * * together with the said James Amyx, the receiver appointed herein, as well as all other parties to this cause and interested in this fund, to appear and assert whatever rights they may have in and to said money herewith tendered into the registry of this court, and that upon a hearing this court enter such order disposing of and disbursing the money herein tendered * * * as to the court may appear equitable and right, and that said order provide that said defendant be released and discharged from all liability hereunder, * * * and that the action of this defendant in reserving the sum of $500 to pay its attorneys * * * be approved, and that payment of said sum of money be allowed." Of the amount of the deposit, $8,330.82 was paid into the registry of the court; $500 (referred to in the prayer) was not paid into the court, but it was held by the bank, with the explanation that a like amount had already been paid to its attorneys as a reasonable fee for the advice given by the attorneys in respect to the acts occurring on March 20th and March 21st, and "concerning the course for this defendant to follow" in relation thereto.

All of the matters in controversy between the plaintiffs and defendants were settled by agreement and the case was tried only in respect to the bank's claim of right to have its use of the $500 mentioned approved. This trial resulted in a judgment denying that relief, in connection with findings of fact against the bank on all the issues presented, and upon appeal that judgment was affirmed. (Tex. Civ. App.) 273 S. W. 657.

[1, 2] As already pointed out, the answer alleged absence of any demand by the receiver prior to March 21st; the assignments of error, the briefs, and the petition for writ of error filed in behalf of the bank reassert that absence. In view of the undisputed fact that the receiver did appear at the bank in the forenoon of March 20th, and requested the money, the claim of lack of demand is predicated upon the assumption that the injunction order restrained the bank from paying, "except upon the check of the said James Amyx, who has this day been appointed by the court receiver," etc.; that is to say, Amyx did not actually draw and present the check in connection with his demand. The receivership order, however, required Amyx to take charge of all the assets of whatever character or wherever to be found, and of this requirement the bank had knowledge and notice. Furthermore, the absence of the check itself was not given as a reason for the declination to pay, but other reasons wholly unrelated to that matter were given. It must be assumed that, if the bank was objecting to the absence of the check and had made that objection known, as it ought to have made it known, the check would have been forthcoming promptly. Circumstances and conduct preclude the bank from now justifying its wrongful act upon that basis.

It was the duty of the bank to obey the plain command of the district court of Coleman county, with promptitude, on March 20th, when evidence of that command was presented to it. The orders, process, and evidence were all fair of face, and the decree imported no ambiguity. The thing which the court had required could be refused only at the peril of the disobedient party. Amyx when he demanded the money was not a claimant (in the "interpleader" sense) for he was the arm of the court, and (by substitution for then present purposes) the common representative of all claimants as well. Such was the character of his representation, and his demand was that of the court itself for the impounding of the fund. Texas Trunk Ry. Co. v. Lewis, 81 Tex. 1, 16 S. W. 647, 26 Am. St. Rep. 776; Riesner v. G., C. & S. F. Ry. Co., 89 Tex. 656, 36 S. W. 53, 33 L. R. A. 171, 59 Am. St. Rep. 84; 23 R. C. L. p. 54, § 28. The bank, through obedience to the court's order, would have put the money in custodia legis to the same (or, maybe, even to a greater) extent than it could have done by an original independent and proper "interpleader." Plainly, its declination of the court's demand

(transmitted through the receiver) contemned the court itself. From these things, two results flowed, either of which of itself precludes any such recovery as is prayed: First, the disobedience of the court's order stained the bank's hands, rendering them unclean in equitable purview; second, if it had duly obeyed that order, it could not, in any event, have become a stakeholder. Whatever conditions (subsequent to its disobedience) portended evil were the direct and proximate consequences of its own wrong, and it would be unconscionable to allow the wrongdoer to be exonerated from those results at the expense of innocent parties.

[3, 4] Besides, necessity for "interpleader" did not exist. Without it, the bank's remedy was plain and adequate. It was an original party defendant in the Coleman county suit and every right it had and every fact by which it was circumstanced could have been and ought to have been set up by way of defense in that suit as, in fact, was done. When the nature of the suit is kept in mind, along with the fact that the res itself was impounded, there is no reason to doubt the power and duty of that court to give the bank full protection. And, of course, a like or an analogous remedy was open to the bank through the Tarrant county suit. Any citizen is liable to suit at the instance of any other citizen upon just grounds or unjust grounds. That is one of the risks that is a part of citizenship itself, and, except where payment of attorney's fees incurred in resisting liabilities sought to be imposed, may have been stipulated for or declared by statute, the citizen must, himself, pay his lawyers. Interpleader is a device of equity, and, as is true of equitable remedies generally, its origin and continued existence rests in necessity of avoiding unjust consequences of the law's deficiencies and to extricate the blameless from unconscionable positions. As its name implies, it denotes an affirmative action. It may be an independent suit brought by the holder of a fund against all claimants, or, in our system (wherein law and equity blend), it may be interposed in a suit brought by one or more claimants in order to vouch in all others; but, manifestly, it is not appropriate to a suit where (as here) all of the claimants are already before the court, for, in that situation, there is nobody to interplead. In every proper instance, therefore, the fundholder must take affirmative action, and the necessity therefor must have been produced by the conduct of others. Here, there was no occasion for affirmative action, because a defensive one would have sufficed, and, as already shown, the condition of which the bank now complains was a product of its own wrong.

[5, 6] Furthermore, attorney's fees to pay the representatives of a true stakeholder are allowed, when allowed at all, by way of court costs. In that manner and to that extent the court operates directly upon the res (i. e., the fund impounded) and devotes a part of its corpus to the payment. But here the exact res in controversy is coram non judice, for the simple reason that it was never brought into the court at all. On the contrary, the bank, acting upon its ex parte judgment, and in defiance of the receivership order, paid out the money to its own lawyers long before it consulted the court in respect to the propriety thereof, and thereafter expressly declined to put that fund in the actual custody either of the court directly or of the court's receiver. As a matter of course, where costs of this nature are properly allowed, the court itself must, first, be given the opportunity to determine whether, under all of the circumstances, a part of the thing impounded may thus be taken, and, second, as to what part (i. e., the amount) ought to be taken for that purpose. By withholding the fund itself, about which the controversy now exists, the bank deprived the court of that opportunity, and this, in our opinion, of itself would preclude the relief sought. Hardin v. Majors (Tex. Civ. App.) 246 S. W. 100; Murphy v. Barron, 286 Mo. 390, 228 S. W. 492, 497.

We believe the honorable Court of Civil Appeals made the right disposition of the case upon proper reasoning, and therefore we recommend affirmance of its judgment.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.