## HALLORAN v. ABILENE STATE BANK.
### (No. 559.)

Court of Civil Appeals of Texas. Eastland.
March 29, 1929.

Gaines & Gaines, of San Antonio, for appellant.

Phillips, Trammell, Chizum & Price, of Fort Worth, and Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for appellee.

LESLIE, J. W. J. Halloran, plaintiff below, appellant here, sued the Abilene State Bank for a $2,400 deposit made by him in that bank under circumstances hereinafter detailed. The Hurley Oil Company, claiming said fund by reason of alleged escrow contract with Halloran, was impleaded by said bank, which latter assumed the attitude of an impartial stakeholder. The trial was before the court and jury, and, upon the answers to certain special issues, a judgment was rendered in favor of the Hurley Oil Company for said $2,400, less $150 deducted therefrom as attorneys' fees for interpleader's attorneys, and costs. From this judgment the appellant, Halloran, has perfected his appeal. It was Halloran's contention that he and the Hurley Oil Company never agreed upon the terms of any contract whereby said deposit became, in fact, an escrow. He demanded the return of such deposit to him, and, upon the bank's refusal to do so, this suit was instituted.

The negotiations out of which the litigation grows were as follows: The Hurley Oil Company, being the owner of an oil and gas lease on 480 acres of land in Brown county, Tex., subdivided the same into tracts of 80 acres each, and listed the same for sale with their agent, Hines. Hines had no authority to bind the Hurley Oil Company by contract for the sale of said acreage. His authority extended merely to finding a purchaser, and all contracts were to be confirmed by one H. P. Lyons, head of the Land Department of the Hurley Oil Company. Hines enlisted the services of Roy Butters in the sale of said acreage, and the latter succeeded in interesting the appellant in tract No. 3 thereof.

The exact results of the negotiations between Halloran and Butters are not disclosed by the record, but in some respects those negotiations are indicated by telegrams and letters hereinafter noticed.

If the negotiations between Halloran and the Hurley Oil Company matured into a contract binding each of them, evidence of such contract must be found in the following letters and telegrams. The first to pass between Halloran and the Hurley Oil Company is as follows:

"September 21, 1926.

"Abilene State Bank, Abilene, Texas—Gentlemen: I sent you the following telegram this A. M.:

"'Wiring you $2,400.00 from the National Bank of Commerce at San Antonio, Texas. Hold pending letter of instructions.'

"The Hurley Oil Company of Abilene, known as an Oklahoma corporation, has agreed to execute an assignment at once in a new five year commercial oil and gas lease to me, covering the following described land:

"'80 acres out of the George S. Baugh tract, John C. Neal Survey No. 638, Brown County, Texas, being subdivision No. 3, Southwest corner of said 80 acres, approximately ⅛ mile Northeast of well now being drilled by the Hurley Oil Co. on the G. W. Black tract.'

"We are to be furnished with complete abstract of title for examination or other evidence of title which is acceptable to our attorneys, Gains, Quin, Harley & Gains, City National Bank Building, San Antonio, Texas, abstract and copy of lease to be mailed at once to the above attorneys, and to have ten days to complete examination of title, upon acceptance of title by our attorneys we are to receive lease on said land, assignment of lease to be held by your Bank subject to examination and approval of title, you are to hold the $2,400.00 subject to the Hurley Oil Company completing well to the depth of 2,100 feet with due diligence in a workmanlike manner, unless oil or gas is found in paying quantities at a lesser depth, that they are now drilling on the G. W. Black tract, upon proper proof of completion of well you are authorized to pay to the Hurley Oil Company the sum of $2,400.00 dollars.

"Yours very truly, W. J. Halloran.

"Address: 555 East Cincinnati Ave., San Antonio, Texas."

At the same time the above communication was forwarded to the bank a copy thereof was directed to the Hurley Oil Company of Abilene, Tex. In acknowledgment of the same the Hurley Oil Company wired Halloran as follows:

"Western Union Telegram

"Abilene, Texas, Sept. 24, 1926.

"W. G. Halloran, 555 East Cincinnati St., San Antonio, Texas. Wish to advise we are bringing abstract Baugh tract Brown County up to date and upon completion of same will mail abstract to your attorneys. The assignments are made out and in Tulsa now for the signature of the president of the com-

pany which we will place in bank upon return here. Regards.

"Hurley Oil Company."

On September 25, 1926, Halloran wired the Abilene State Bank the following message:

"Western Union Telegram

"130D BQ 59 Brownwood, Tex., 1026A Sept. 25, 1926.

"Abilene State Bank, Abilene, Texas. Referring to my letter of Sept. 21 and telephone conversation this A. M. as the Hurley Oil Co. has failed to deliver the assignment to you for me as agreed covering 80 acres oil and gas lease on George S. Baugh tract in Brown County, Texas, I am now calling the deal off Stop Hold money until advised.

"W. J. Halloran 1048A."

On the same day the bank wrote Halloran as follows:

"We have all of your telegrams and your letters, and we are holding the money subject to your further advice."

Halloran, at the time of sending the last message, sent a copy thereof to the Hurley Oil Company, who was made aware on September 25th that the deal had been called off.

At the time Halloran sent the telegram of September 25th, he wrote the bank, more fully explaining that the Hurley Oil Company had not complied with its obligations, and that he had countermanded his original offer in the letter of September 21st, and the money was being left in the bank until further advised by him.

The decisive question is, Did Halloran withdraw his offer or proposition before the same was accepted by the Hurley Oil Company? If it was withdrawn, it was done by his telegram and letter to that effect of date September 25, 1926. If no contract had actually come into existence at the date of such attempted withdrawal, then the correspondence and communication subsequent thereto are of no special importance in determining the merits of this litigation, except as they may tend to confirm and establish our views, as hereinafter expressed.

■ To properly estimate the legal effect of the above correspondence and negotiations in the instant case, certain well-recognized rules must be borne in mind. The subject-matter of the alleged contract beween the litigants was the purchase and sale of an assignment of an oil and gas lease on 80 acres of land. To pass title to the property, there must have been a contract of sale between Halloran, the purchaser, and the Hurley Oil Company, the seller. They must have assented to the same thing in the same sense. There must have been no differences of terms between the parties, and, if there were differences or variations in terms, though apparently unimportant, that fact was enough to destroy the mutuality of assent essential to the creation and existence of a contract between the parties. Flatow, Riley & Co. v. Roy Campbell Co. (Tex. Com. App.) 280 S. W. 517; Missouri State Life Ins. Co. v. Boles (Tex. Civ. App.) 288 S. W. 271; Cantrell v. Garrard (Tex. Com. App.) 240 S. W. 533; Cranfill v. Swann Petroleum Co. (Tex. Civ. App.) 254 S. W. 582; Blue v. Conner (Tex. Civ. App.) 219 S. W. 533.

■ Without such assent there can be no contract, and, until the assent comprehends the whole of the proposition, and the minds of the contracting parties have met on the terms of the contract, either party is at liberty to recede at any time from a proposal or proposition that has not been accepted. Summers v. Mills, 21 Tex. 77; Greene et al. v. Waggoner Refining Co. et al. (Tex. Civ. App.) 278 S. W. 492.

An application of these principles to the undisputed facts of this case points to the correct disposition of this appeal.

■ We now pass to a consideration and an analysis of Halloran's letter of date September 21, 1926, to the Abilene State Bank. Both parties seem to rely upon this communication for support of their respective contentions. By this communication and the telegram embodied therein, the $2,400 involved in this suit was deposited in the bank. By the terms of this letter and the Hurley Oil Company's response thereto, the rights of these litigants to that deposit must be determined. This letter was Halloran's declaration of the terms upon which he was willing to make the escrow deposit and to purchase the assignment of said lease. A copy of the letter, as noted, was furnished to the Hurley Oil Company, and the propositions contained in that letter undoubtedly furnish the basis for all subsequent negotiations relative to the deal. In this letter Halloran proposed: (1) To purchase an 80-acre lease assignment, the same being subdivision No. 3, Geo. S. Baugh tract of land, Brown county, Texas; (2) he was to be furnished with a complete abstract of title for examination or other evidence of title acceptable to his attorneys; (3) abstract and copy of lease to be mailed at once to his attorneys at San Antonio, Texas; (4) to have ten days to complete examination of title; (5) upon acceptance of title by his attorneys he was to receive lease of said land; (6) the assignment of the lease was to be held by the Abilene bank subject to examination and approval of title; (7) the $2,400 to be held by the bank subject to completion of the well by Hurley Oil Company to a depth of 2,100 feet, with due diligence, etc.

On receipt of the copy of the above letter, the Hurley Oil Company, in response thereto, sent Halloran the message of September 24, 1926, in which no specific mention was made of Halloran's letter, and only by inference, and the testimony of H. P. Lyons,

can it be said that it was in response to the Halloran letter of September 21st. By its telegram the Hurley Oil Company merely advised Halloran: (1) Abstract to Baugh tract, Brown county, being brought to date, and on completion would be mailed to Halloran's attorneys; (2) that assignments were then made out in Tulsa for the signatures of the president, and would be placed in the bank when returned to Abilene.

It will be observed that there are, at least, seven conditions upon which Halloran was willing to deposit the $2,400 in escrow. Obviously, there is in the Hurley telegram of September 24th no general or specific acceptance of the terms contained in Halloran's offer to purchase the assignment. This telegram did not obligate the Hurley Oil Company to do anything. It merely advises that the abstract is being brought to date, and, when completed, would be mailed to Halloran's attorneys, and that, when the assignment was executed, it would be placed in the bank on its being returned to Abilene. The time when the abstract would be completed and when the assignment would be returned was both indefinite and uncertain. In this telegram no notice whatever was taken of the major portion of the terms specified by Halloran, the acceptance of which by Hurley Oil Company was necessary to the creation of the alleged escrow agreement.

On September 25, 1926, with the negotiations between the contracting parties in this state of confusion and uncertainty, and prior to any other alleged acceptance by the Hurley Oil Company of Halloran's offer, the latter withdrew that offer transmitted in his letter of September 21st to the Abilene State Bank, and directed the return to himself of the $2,400. This he had the right to do on the principle above stated.

There are other definite indications in this record that the minds of the contracting parties never met on the terms of the contract. In a telegram of September 18th, prior to receiving Halloran's letter of date September 21st, the Hurley Oil Company wired Roy Butters, San Antonio, Tex., to the effect that it was confirming a sale by Butters to Halloran of the *second 80-acre tract* out of the Baugh survey, and in the same communication demanded that he (Butters) wire confirmation of the deal to the company at Abilene, and that he wire $2,400 to be placed in escrow with Abilene State Bank *in the name of Hurley Oil Company*, subject to the completion of the well to 2,100 feet, etc., and subject to proof of title. In that telegram it was stated:

"We are placing oil and gas lease in Abilene State Bank in your name to be delivered to upon receipt of your money."

This communication was unknown to Halloran, who at all times was endeavoring to purchase subdivision 3 of said tract of land, and at no time negotiated for the purchase of tract No. 2, nor did he at any time propose that the escrow be deposited in the name of the Hurley Oil Company, or that the lease be placed in the bank in the name of Butters.

Further and more convincing proof of a lack of a mutual assent of the contracting parties is found in the Hurley Oil Company's letter of September 27, 1926 (after Halloran had countermanded his offer), wherein that company states to said bank:

"You have a deposit of $2,400.00 in escrow to be delivered to the Hurley Oil Company, etc. * * * The agreement is that when we have reached a depth of 2,100 feet in our well now drilling in that area, you will deliver the assignment to W. J. Halloran and pay the sum of $2,400.00 to us. We are complying with our part of this escrow contract and we insist that the agreement be carried out in its entirety."

By a casual examination it will be observed that this construction of the alleged escrow agreement ignores several conditions of Halloran's offer of September 21st. The "agreement" set forth in this letter is entirely too limited to indicate the meeting of minds upon the terms specified in Halloran's letter. For instance, in the letter of September 21st, Halloran required that the assignment be held by the bank subject to examination and approval of title by his attorneys, and, upon acceptance of the title by his attorneys, Halloran was to receive the lease and assignment. His right to the assignment and the lease upon the approval of title was, no doubt, a valuable one, by reason of the nature and fluctuating value of oil and gas leases in the vicinity of a drilling well. In its letter of the 27th, the Hurley Oil Company says nothing of the lease, and contends that the assignment was not to be delivered until the well reached 2,100 feet.

In the foregoing respects and others not necessary to discuss, the letters and negotiations clearly establish a lack of mutual assent essential to the creation and existence of the contract asserted by the appellee, Hurley Oil Company. The trial court should have instructed a verdict for Halloran, and the assignments complaining of his failure to do so are sustained.

This cause has been fully developed. The correspondence and negotiations introduced disprove the existence of any contract entitling the Hurley Oil Company to a judgment. The judgment below was in favor of the Hurley Oil Company and against Halloran for the sum of $2,400, less the sum of $150 deducted therefrom for attorneys' fees in behalf of the interpleader, and $17.15 costs.

■ The judgment as to attorneys' fees in favor of the bank will not be disturbed, since it is generally held that an innocent stakeholder is entitled to his costs (attorneys' fees being part thereof, Continental Nat. Bank

v. Smith [Tex. Com. App.] 286 S. W. 163), out of the fund in controversy, which costs, as between the parties contending for said fund, must ultimately be paid by the unsuccessful party. Nixon v. New York Life Insurance Co., 100 Tex. 250, 98 S. W. 380, 99 S. W. 403; Beilharz v. Illingsworth, 62 Tex. Civ. App. 647, 132 S. W. 106; 4 Pomeroy's Equity, § 1480.

In all other respects, the judgment will be reversed and here rendered, granting W. J. Halloran a judgment against the Abilene State Bank for the sum of $2,400, less said $150 attorneys' fees, and against the Hurley Oil Company for all costs in this behalf expended, including the amount of said attorneys' fees ($150), together with 6 per cent. interest per annum on $2,400 from September 28, 1926, until paid. The funds deposited by the stakeholder with the registry of the court will be delivered to appellant, Halloran, and this judgment credited therewith.

It is ordered that said judgment be reversed and rendered as indicated, and undisturbed in all other respects.