### CHANCELLOR v. CHANCELLOR.
### (No. 12199.)

Court of Civil Appeals of Texas. Fort Worth. Nov. 2, 1929.

Rehearing Denied Nov. 30, 1929.

Phillips, Trammell, Chizum, Price & Estes, R. T. Thornton, Jr., and Eugene Lary, all of Fort Worth, for appellant.

W. E. Forgy, of Archer City, for appellee.

BUCK, J. R. N. Chancellor, on July 20, 1928, filed suit in Archer county against the Prætorians, a fraternal insurance society, and for cause of action showed: That on or about May 16, 1916, his son Robert Irl Chancellor took out a policy of insurance in the defendant society in the sum of $1,000, with Chancellor Moore, the insured's nephew, as beneficiary. That on July 28, 1917, the beneficiary in said policy was changed to Ovie Bernice Chancellor, then the wife of the insured. That on August 3, 1926, said Mrs. Ovie Bernice Chancellor obtained a divorce from the insured. That said Robert Irl Chancellor, the insured, died November 27, 1926, leaving no widow and no children. Thus Ovie Bernice Chancellor was at the date of insured's death the beneficiary. That, at the time of the death of the insured, all premiums due on the policy had been paid. That the mother of the insured died in 1894, long prior to the death of the insured. Plaintiff prayed for judgment for the amount of the policy, etc.

The Prætorians answered, acknowledging it had issued an insurance policy on the life of Robert Irl Chancellor in the sum of $1,000. It was further alleged: That the defendant had been informed that the insured and his wife, Mrs. Ovie Bernice Chancellor, had been divorced prior to the insured's death. That the defendant had been further informed that during the year 1924, Mr. and Mrs. Chancellor had legally adopted an infant girl child, and had named her Robert Elaine Chancellor, who survived the insured. That, under the laws of Texas and under the constitution and by-laws of the order, Mrs. Ovie Bernice Chancellor, by reason of her divorce from Robert Irl Chancellor, was no longer eligible as a beneficiary and was without insurable interest in the life of said Robert Irl Chancellor. That, under the laws of the state and under the constitution and by-laws of the defendant society, when at the time of the death of the insured there was left no surviving widow with an insurance interest, it is specially provided by the by-laws of the society that the certificate shall be payable to any child or children living. Defendant further prayed that the said Robert Elaine Chancellor be made a party to the suit, and further alleged that it was ready and willing to pay the amount of the certificate to whomsoever the court should determine was entitled to it. Defendant prayed that it be entitled to a reasonable attorney's fee, which it alleged was $150.

Robert Elaine Chancellor, having been made a party, by her mother, as next friend, answered as intervener, and pleaded. That on March 17, 1917, Robert Irl Chancellor and Mrs. Ovie Bernice Chancellor, now Mrs. Ovie Bernice Mercer, were intermarried. That on said date Robert Irl Chancellor had a certifi-

cate for $1,000 in the defendant company, and that soon after said marriage Robert Irl Chancellor had Mrs. Chancellor made the beneficiary in said certificate. That on or about February 8, 1924, her natural mother, Mamie Wade, of Dallas, Tex., transferred the care and custody of intervener to the Chancellors, and that said Chancellors duly and legally adopted said intervener. That by said adoption intervener became legally entitled to all the rights of an heir and child, and, since Mrs. Chancellor Mercer had been divorced from Robert Irl Chancellor, she was not entitled to any of the certificate, and, in the absence of any beneficiary named in the policy who was entitled under the law to receive the proceeds thereof, the intervener was entitled to the same; for which intervener prayed.

On a trial before the court, the trial court gave judgment in favor of R. N. Chancellor, the father of Robert Irl Chancellor, for $900, and judgment for the defendant, the Prætorians, for $100, as a reasonable attorney's fee. From this judgment the intervener has appealed to this court.

There is an agreed statement of facts from which is stated the following: That Robert Irl Chancellor and Ovie Bernice Chancellor Mercer were legally married on March 5, 1917. On September 24, 1924, said Robert Irl Chancellor and wife, Ovie Bernice Chancellor, legally adopted a baby girl, now of the age of 4 years, from one Mamie Wade, giving it the name of Robert Elaine Chancellor. On July 28, 1917, the defendant society issued a policy of insurance in the sum of $1,000 to said Robert Irl Chancellor, in which Mrs. Ovie Bernice Chancellor was named as beneficiary. On August 3, 1926, Mrs. Ovie Bernice Chancellor was granted a divorce from the said Robert Irl Chancellor, together with the care, custody, and control of said minor child, intervener herein. That Robert Irl Chancellor died without changing the name of the beneficiary in said certificate of insurance and without a will, and that he left no child or children of his body surviving him. That R. N. Chancellor, plaintiff herein, is the father of said Robert Irl Chancellor, and that the mother of said Robert Irl Chancellor died in 1894, long prior to the death of said Robert Irl Chancellor. That section 3 of article 24 of the constitution of the Prætorians, is as follows:

"In the event of the death of a beneficiary prior to the death of a member, if said member fail to designate another beneficiary, then the amount which would have been due such deceased beneficiary, under the benefit certificate, shall be payable to the surviving beneficiary or beneficiaries, if any. If the member die and no beneficiary survive him, then the amount of the benefit certificate shall be paid

"First, to the widow or widower, if no child or children survive; but if a child or children survive the member, then one half to the widow or widower, and the other one half in equal parts to the member's surviving children. Second, if the member leaves no widow or widower, surviving, then to the member's children in equal parts; Third, if said member leave neither widow, widower or children surviving, then to the member's father and mother, in equal parts, or to the survivor of either; Fourth, if the member die leaving neither of the foregoing surviving, then to his or her brothers and sisters, in equal parts. If no father or mother, brothers or sisters, nephew or niece survive the member, then the benefits shall revert to the life benefit funds.

"Section 4. If there shall be a divorce of beneficiary from member, then the interest of the named beneficiary shall be cancelled; and if no other beneficiary is named by the member then the amount of certificate shall be paid as provided in section 3 of this article."

It is stipulated that articles 42, 43, 44, 45, and 4831, Rev. Civ. Statutes of 1925, be considered as specially pleaded and introduced in evidence. It is agreed that the following issue of law is involved in this case:

"Is R. N. Chancellor, the father of Robert Irl Chancellor, or Robert Elaine Chancellor, the adopted daughter, the legal beneficiary under the certificate issued by the defendant, the Prætorians, on the life of Robert Irl Chancellor?"

There has been filed an agreed motion to perfect the record, which is hereby granted. Under said motion it is agreed that the adoption papers may be considered as a part of the statement of facts. Said adoption papers appear to be in due form, and show that Mamie Wade of Dallas county authorized and empowered Mr. and Mrs. R. I. Chancellor, of the city and county of Archer, to legally adopt her infant daughter, to rear and educate her as their own child, and fully authorized the said Mr. and Mrs. R. I. Chancellor to have full control of the child, waiving any and all parental authority and liability that may accrue by virtue of the hereinbefore mentioned authority, and agreed that no accounting should be made to said Mamie Wade at any time of the whereabouts of said child. This agreement is duly acknowledged before a notary public. There is also an obligation by R. I. and Mrs. Chancellor in which it is stated that, wishing to confer upon baby Robert Elaine Chancellor, a minor, all the rights and privileges, both in law and equity of a legal heir, do in consideration thereof adopt the said baby Robert Elaine as their legal heir to all intents and purposes of the statutes of this state. This instrument is duly acknowledged by both Mr. and Mrs. Chancellor.

The adoption papers are of record in the office of the county clerk of Archer county.

## Opinion.

Articles 42, 43, and 44, Rev. Civ. Statutes of 1925, are as follows:

42. "Any person wishing to adopt another as his legal heir shall file in the office of the county clerk of the county in which he resides a written statement signed by him and duly authenticated or acknowledged as deeds are required to be, reciting in substance that he adopts the person named therein as his legal heir, and the same shall be admitted to record in said office." [Acts 1850.]

43. "When such statement is so recorded it shall entitle any child so adopted to all the rights and privileges, both in law and equity, of a legal heir of the adoptive parent, as a child has by law against lawful parents. If the adoptive parent has at the time of such adoption or shall thereafter have, a child begotten in lawful wedlock, such adopted heir shall in no case inherit more than one-fourth of the estate of the adoptive parent." [Acts 1907.]

44. "The parent or parents of a child who is to be so adopted may, by an instrument in writing duly signed and authenticated or acknowledged as deeds are required to be, transfer their parental authority and custody over such child to the adoptive parent. Where the lawful parent or parents have voluntarily abandoned such child and left it to the care of others for a period of at least three years, or voluntarily left it to be cared for by charity for a period of at least three years, and such child shall be so adopted, such parent or parents shall be held to have transferred their parental authority and custody over said child to the adoptive parent; and in all such cases such lawful parents shall thereafter be barred from exercising any authority, control or custody over the person or estate of such child as against the adoptive parent. No adoptive parent shall transfer his authority and custody to any other person." [Acts 1907; Acts 3d C. S. 1920.]

As noted, article 42 is in the same verbiage as the original act of 1850. Article 43 is practically in the same wording and has the same meaning as the original act of 1850. But article 44 is comparatively new legislation. By this act it is provided that the parent or parents of a child who is to be adopted by another or others shall, by an instrument in writing, duly signed and authenticated or acknowledged as deeds are required to be, transfer the authority or custody over such child to the adoptive parent, and, when said child shall have been adopted, the natural parents shall thereafter be barred from exercising any authority, control, or custody over the person or estate of said child as against the adoptive parent.

Article 4831, in chapter 8, tit. 78, under the heading "Fraternal Benefit Societies," Rev. Civ. Statutes of 1925, is as follows: "The payment of death benefits shall be confined to wife, husband, relative by blood to the fourth degree, children by legal adoption, mother-in-law, son-in-law, daughter-in-law, step-father, step-mother, step-children, father-in-law or to a person or persons dependent upon the member. If after the issuance of the original certificate the member shall become dependent upon an incorporated charitable institution, he shall have the privilege with the consent of the society, to make such institution his beneficiary. Within the above restrictions each member shall have the right to designate his beneficiary, and from time to time have the same changed in accordance with the laws, rules or regulations of the society, and no beneficiary shall have or obtain any vested interest in the said benefit until the same has become due and payable upon the death of the said member. If a member shall die without designating a beneficiary, or if at the death of the member the beneficiary designated is dead or has no insurable interest in the life of the member, the benefits payable under the certificate shall not be forfeited but shall be paid to the persons named in this article, but * * * if such society shall fail to prescribe the order of payment, then the same shall be payable to the persons named in this article and in the order first named."

One of the purposes of fraternal benefit societies is to provide insurance and protection for the members of the insured's family and of those dependent upon the insured for support. In McDonald v. Texas Employers' Ins. Ass'n, 267 S. W. 1074, 1077, writ of error refused by the Supreme Court, opinion by Justice Looney of the Dallas Court of Civil Appeals, it is held that an adopted mother is entitled to the benefits of the workmen's compensation insurance; the adopting parent having an interest in the earnings and earning capacity of the adopted child. Article 43 provides that an adopted child shall be entitled to all the rights and privileges, both in law and equity, of the legal heir of the adoptive parents, as a child has by law against lawful parents. This includes the right to support, education, and inheritance from the adoptive parent.

As the named beneficiary in the instant case had no insurable interest in the life of the member, the benefits under the by-laws are payable to one of the persons named in article 4831. The state expressly provides that the payment shall be made to such persons "in such order as the by-laws of the society shall prescribe." The by-laws of the defendant society provide that, if a child or children survive, and no widow or widower survive, the policy shall be payable to the member's surviving children.

In McDonald v. Texas Employers' Ins. Ass'n, the court said: "The adopted child is given the same right as against the adopting parent for support, maintenance, and humane treatment as a child has by law against his natural parents, and it is made unlawful for the adopter to transfer his authority and custody to any other person. Under these amendments, the relation between the adopting parent and the adopted child is in all essentials the same as between the natural parent and his child. It follows, therefore, that by reason of the changes wrought in the law, the doctrine announced in the cases mentioned above is no longer the law of this state."

The writer of the opinion refers to the case of Eckford v. Knox, 67 Tex. 200, 2 S. W. 372, and other cases, and said: "The law of adoption of this state as it exists to-day and as it existed on November 17, 1911, the date when Mrs. McDonald adopted the deceased, is radically different from the law brought under review in the cases mentioned above. The statute has undergone two amendments; one in 1907 (Acts 30th Leg. [1907] c. 47), and the other in 1920 (Acts 36th Leg. [1920] 3d Called Sess. c. 62 [Vernon's Ann. Civ. St. Supp. 1922, arts. 3, 4]). The act of 1907 provides that where the parent executes an instrument of writing, transferring his parental authority and custody over the child to the adopting party (the amendment of June 19, 1920, adds), or where the parent has voluntarily abandoned such child and left the same to the care of others for a period of at least three years, * * * in either event, if such child is adopted in accordance with the provisions of the statute, all parental authority and right to the custody of the child on the part of the natural parents are transferred to the adopter."

Kemp v. New York Produce Exchange, 34 App. Div. 175, 54 N. Y. S. 678, 679, decided by the Supreme Court of New York, Appellate Division, is similar in facts and issues to the present case. This suit was brought by Lily Kemp against the New York Produce Exchange to recover on a mutual benefit certificate of insurance issued by defendant to her adopted father, who was a member of the Exchange. The case was submitted to the appellate court on an agreed statement of facts, and said court rendered judgment for the plaintiff, in which all concurred. The opinion in part says: "It may also be conceded that the plaintiff is not a 'child' of the deceased member, in the strict sense of that term, which refers to the physical procreation of the child, and not the legal rights that may have been afterwards conferred upon her by agreement of parties, or acts of the legislature. So it has been said, 'Adopted children are not children of the persons by whom they have been adopted, and the act of assembly does not attempt the impossibility of making them such' (Schafer

v. Eneu, 54 Pa. 304), and 'Giving an adopted son a right to inherit does not make him a son in fact' (Com. v. Nancrede, 32 Pa. 389). But this principle is not decisive of the question involved here. The question is not, what is the strict, accurate meaning of the word 'child'? but, in what sense was it used in the by-laws? Already, at the time of the passage of the act empowering the defendant to create its gratuity fund, and of the enactment of the defendant's by-laws in pursuance of such authority, adoption of children was authorized by the laws of this state. By chapter 830, § 10, of the Laws of 1873, it was enacted that a child adopted under the provisions of that act, and the person adopting him, should thenceforth 'sustain toward each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation, excepting the right of inheritance.' The statute of 1882 authorizes the payment from the gratuity fund to the widow, children, next of kin, or other persons dependent on the deceased member. The by-laws state that the object of the gratuity fund is to provide for the families of members. As the law stood at this time, an adopted child was a member of the family of his adopter, and a dependent. Though he was not entitled to inherit from the adopting parent, still such parent could, in a proper case, be compelled to support the child, the same as a natural child. It seems to us that, even under the then existing condition of the law, the case of an adopted child fell within the terms of the by-laws, and it was entitled to share in the death fund. In 1887, however, the statute as to adoption was amended so as to give the adopted child the right of inheritance. The effect of this amendment was to modify the statutes of distribution and descent. Dodin v. Dodin, 16 App. Div. 42, 44 N. Y. S. 800. From this time the adopted child had the same rights as a natural child, except as to limitations in deeds or wills conditioned on the death of the adopting parent without issue."

In 2 Words and Phrases, First Series, p. 1118, is cited the case of Martin v. Aetna Life Ins. Co., 73 Me. 25, in which it is said: "'The word "child," in legal documents, is not always confined to immediate off-spring. It may include grandchildren, stepchildren, children of adoption, etc., as may be necessary to carry out the intention.' As used in a life policy payable to the wife of the insured, or to their children if the wife should die before the insured, which policy was written at the time when the insured had no children except an adopted child, it was construed to include such adopted child."

In 45 Corpus Juris, p. 148, under the title "Mutual Benefit Insurance," and under subhead "Eligibility of Beneficiary," it is said: "An adopted child has been held eligible under a provision authorizing benefits to be made payable to children of the member;

and where the member had no nearer relatives, than children, named as beneficiaries, who are virtually, although not legally, adopted, and the insurance must either go to them or lapse, they will take the proceeds"—citing cases.

Other cases from other jurisdictions may be cited sustaining the right of adopted children to be a beneficiary under an insurance policy, such as Virgin v. Marwick, 97 Me. 578, 55 A. 520; Bray v. Miles, 23 Ind. App. 432, 54 N. E. 446, 55 N. E. 510; In re Walworth's Estate, 85 Vt. 322, 82 A. 7, 37 L. R. A. (N. S.) 849, Ann. Cas. 1914C, 1223; Lanferman v. Vanzile, 150 Ky. 751, 150 S. W. 1008; Markover v. Krauss, 132 Ind. 294, 31 N. E. 1047, 17 L. R. A. 806; Warren v. Prescott, 84 Me. 483, 24 A. 948, 17 L. R. A. 435, 30 Am. St. Rep. 370; In re Olney, 27 R. I. 495, 63 A. 956.

Appellee relies, apparently, on such cases as Harle v. Harle, 109 Tex. 214, 204 S. W. 317, 15 A. L. R. 1261, by Justice Greenwood. In that case the facts show that in 1879 Nathan Harle, who was then the husband of Gracie Ann Harle, and Freeman Slaughter, who was then the husband of Amanda Slaughter, acquired by purchase the 160 acres of land in controversy. By a marriage prior to that with Gracie Ann Harle, Nathan Harle had three children, named Bruff Harle, John Harle, and Amanda Slaughter. Suit was brought in the district court of Navarro county by Nathan Harle against Bruff Harle, John Harle, and Freeman Slaughter to try title to the entire 160 acres of land. Gracie Ann Harle had no children, but she adopted, in compliance with the Texas statutes, Mary Ann Richardson, who married Wash McGriff. Mary Ann McGriff died intestate, and at a later date Gracie Ann Harle also died intestate. The Supreme Court held that the adopted child of Gracie Ann Harle had no inheritable blood as a natural child would have so that any property she owned at her death would descend to the children of such adopted children, and other remarks in the course of the opinion with reference to whether or not the word "child" or "children" included adopted heirs is obiter dicta. The cases of Eckford v. Knox, 67 Tex. 200, 2 S. W. 372, and Burgess v. Hargrove, 64 Tex. 117, which are cited in Harle v. Harle, were decided before the change in our statutes heretofore mentioned. Therefore the holding in such cases cannot be applied under the amended statutes.

In 11 Corpus Juris, 752, it is said: "Adopted children may be embraced within the meaning of the word. especially where such interpretation is justified by the context of the statute or instrument in which the term is used."

Many cases, some of which we have already noted, are cited under this statement of the law.

 We conclude that the trial court erred in rendering judgment for R. N. Chancellor and against appellant, Robert Elaine Chancellor. That judgment should have been rendered awarding Robert Elaine Chancellor, the adopted child of the insured, the amount of the policy, $1,000. We do not think that the child should be charged with the attorney's fee of the insurance company, but that said attorney's fee should be charged as costs, and paid by the appellee.

Therefore the judgment of the trial court is reversed, and judgment here rendered that appellant receive the amount of the policy of the Prætorians, and that appellee be awarded nothing, and that all costs, including the $100 attorney's fee allowed the insurance company be adjudged against appellee.

Judgment reversed and rendered.