**Weedoll GIVENS, Appellant,**

v.

**GIRARD LIFE INSURANCE COMPANY OF AMERICA, and Edna P. Morris, Appellees.**

**No. 17819.**

Court of Civil Appeals of Texas, Dallas.

April 6, 1972.

Rehearing Denied May 4, 1972.

Second Rehearing Denied May 25, 1972.

James A. Ellis, Jr., Carrington, Coleman, Sloman, Johnson & Blumenthal, Dallas, for appellant.

Charles A. Girand, James H. Walker, Dallas, for appellees.

GUITTARD, Justice.

Girard Life Insurance Company filed this interpleader action to determine ownership of insurance proceeds on the life of Walter Morris, deceased. The petition names as defendants Weedoll Givens, the designated beneficiary, and Edna Morris, widow of the insured. The principal question is whether designation by the husband of an unrelated person as beneficiary of life insurance purchased with community funds is constructive fraud on the wife.

The case was tried on an agreed statement of facts, which includes the following information. Walter and Edna Morris were married in 1928, and had several children, some of whom survive, but when he died on June 22, 1970, he had not lived with Edna for more than ten years. He held a certificate of insurance under a group life insurance policy obtained from Girard Life by his employer, who paid all the premiums and made no deductions from his pay for that purpose. On June 27, 1967, Morris changed the beneficiary to Weedoll Givens, who was not related to him by blood or marriage and was described in the designation as a friend. She had been acquainted with him since 1963, and their friendship continued until his death.

The policy provided a death benefit of $4,000, which the insurance company paid into court. Other assets are described as follows:

> "The only known asset of the community estate of Walter Morris and Edna P. Morris, other than personal items, is approximately one acre of land near Fayetteville, Texas (and insurance policies, if same are considered assets of the community estate)."

No will was found. Community indebtedness consisted of $350 on a television and stereo purchased by Edna Morris, taxes due on the acre of land near Fayetteville, and unpaid funeral expenses of $215.

The trial court held that the insurance proceeds were community property and that the change of beneficiary from his wife Edna Morris to the unrelated friend "was an act of constructive fraud upon the rights of Edna P. Morris as to her half of the proceeds." Accordingly, the judgment awarded one-half of the proceeds to the widow and the other half to the beneficiary, who appeals, contending that the stipulated facts fail to show any ground to defeat the prima facie case established by her designation as beneficiary. We hold that the facts support the judgment.

We agree with appellant that the rights of the insured husband under this contract were subject to his statutory power of management and disposition. Life insurance is defined as property by Vernon's Tex.Rev.Civ.Stat.Ann. art. 23, subd. 1 (1969), and earnings during marriage are community property under Tex.Fam.Code, § 5.01 (1969), V.T.C.A. Since the premiums paid by his employer were part of the compensation for his services, this insurance is deemed to be purchased out of his earnings and therefore community property. Herring v. Blakeley, 385 S.W.2d 843 (Tex.Sup.1965); Lee v. Lee, 112 Tex. 392, 247 S.W. 828 (1923). Like other community property purchased with earnings, it

was within his sole management, control and disposition under the Family Code [1] and the certificate issued in his name was subject to his disposition under a specific provision of the Insurance Code.[2] However, designation of a life insurance beneficiary is equivalent to a gift in the absence of a consideration moving from the beneficiary to the insured. Evans v. Opperman, 76 Tex. 293, 13 S.W. 312 (1890). Consequently, our question here is a particular aspect of the general question of the power of the managing spouse to make gifts of community property without consent of the other spouse. Reconciliation of the managerial power of one spouse with the interest of the other spouse as equal owner is a problem inherent in the concept of management by one spouse of marital property owned in common. This concept has come down to us from the laws of Spain and Mexico, and is carried forward in the statutes above mentioned without substantial change, except that the managerial powers of the husband have been re-

stricted and those of the wife have been extended with respect to classes of property not now before us.

Our review of the authorities reveals that the husband's power to make gifts of community property has always been limited, though the limits have never been clearly defined. Early Spanish authorities expressed various opinions.[3] Probably the prevailing Spanish view was stated by the commentator Escriche, as follows:

"* * * the husband can, without the consent of the wife, make *inter vivos* conveyances [of their community property] and even moderate donations for just causes; but excessive or capricious gifts will be null, and alienations made with intent to defraud the wife, who will have action in all these cases against the properties of the husband and against the possessor of the things conveyed." [4]

In Stramler v. Coe, 15 Tex. 211 at 216 (1855), Chief Justice Hemphill, citing Es-

1. Tex.Fam.Code § 5.22 (1969):
   "Community Property: General Rules
   (a) During marriage, each spouse has the sole management, control, and disposition of the community property that he or she would have owned if single, including but not limited to:
   (1) personal earnings;
   (2) revenue from separate property;
   (3) recoveries for personal injuries; and
   (4) the increase and mutations of, and the revenue from, all property subject to his or her sole management, control, and disposition.
   (b) If community property subject to the sole management, control, and disposition of one spouse is mixed or combined with community property subject to the sole management, control, and disposition of the other spouse, then the mixed or combined community property is subject to the joint management, control, and disposition of the spouses, unless the spouses provide otherwise by power of attorney or other agreement in writing.
   (c) Except as provided in Subsection (a) of this section, the community property is subject to the joint management, control and disposition of the husband and wife, unless the spouses provide other-

wise by power of attorney or other agreement in writing."

2. Tex.Ins.Code Ann. art. 3.49–3 (Supp. 1972), V.A.T.S.:
   "A spouse shall have management, control and disposition of any contract of life insurance or annuity heretofore or hereafter issued in his or her name or to the extent provided by the contract or any assignment thereof without the joinder or consent of the other spouse."
   Appellant does not rely on this statute. Therefore, we express no opinion as to whether this statutory language indicates legislative intent to narrow the protection which the courts have given the widow under the constructive fraud doctrine or to broaden the management powers with respect to insurance purchased with earnings beyond those which the insured has under the Family Code, § 5.22(a), *supra*.

3. Huie, Community Property Laws as Applied to Life Insurance, 18 Tex.L.Rev. 121 (1940); de Funiak, Principles of Community Property, 2d Ed. § 121 (1971).

4. Translation quoted in Huie, *supra* note 3, at 123, citing Escriche, Diccionario de Legislacion Anotado (1840) 71.

criche and other Spanish authorities, declares:

"The husband has the active control and administration of the ganancial property during the matrimony. No consent of the wife is necessary to a valid alienation of such property by the husband. But excessive or capricious donations and sales, made with the intent to defraud the wife, would be void; and she would be entitled to her action against the property of the husband and against third possessors."

Prof. Huie has pointed our that this is almost a literal translation of Escriche's language, and therefore the court must have intended to adopt the rule as laid down by Escriche, but that the court's statement is ambiguous as to whether a showing of fraudulent intent is required with respect to donations as well as sales, whereas Escriche made it clear that excessive or capricious gifts would be void without regard to whether the husband intended to defraud the wife.[5] This distinction seems to have been overlooked in later cases in which Texas courts have said that the husband may use his managerial powers to give away community property so long as he does so without intent to defraud the wife.[6] However, the Supreme Court has never held that proof of actual intent to defraud is required to avoid an "excessive or capricious" gift. Several courts of civil appeals have treated intent to defraud the wife as a fact issue to be submitted to the jury.[7] This approach has been criticized on the ground that making the validity of the gift depend on the subjective intent of

the deceased husband leaves the wife's protection against excessive gifts inadequate and uncertain, and that the husband would never know in advance whether his gift would stand or fall, because its validity would depend upon a jury's speculation upon an issue of fact incapable of being accurately determined.[8]

We are persuaded that the widow should not have the burden of establishing fraudulent intent in order to protect her interest in the community property from abuse of her husband's managerial powers. This view is sustained by Texas authority. In appropriate cases our courts have dispensed with proof of fraudulent intent on the theory of constructive fraud, a judicial convention employed to achieve a just result in cases where the wrong to the wife is so clear that intent is immaterial. Thus an "excessive or capricious donation" was held to be "presumptively fraudulent" in Hartman v. Crain, 398 S.W.2d 387 (Tex.Civ.App., Houston 1966, no writ). Also in Martin v. Moran, 11 Tex.Civ.App. 509, 32 S.W. 904 (Fort Worth 1895, no writ), the insured's designation of his own estate as beneficiary was held to be a fraud on the wife because he had no power to give her interest in the community property to himself. The constructive fraud concept has been applied in cases in which the beneficiary has been changed from the wife to a relative of the insured, and the community estate remaining was insolvent or its assets so meager that the value of the property left in the hands of the surviving spouse was less than the proceeds of the policy. Davis v. Prudential Ins. Co. of

5. Huie, *supra* note 3, at 128.

6. Krueger v. Williams, 163 Tex. 545, 359 S.W.2d 48 (1962); Volunteer State Life Ins. Co. v. Hardin, 145 Tex. 245, 197 S.W.2d 105 (1946); Moody v. Smoot, 78 Tex. 119, 14 S.W. 285 (1890); Rowlett v. Mitchell, 52 Tex.Civ.App. 589, 114 S.W. 845 (Texarkana 1908, no writ).

7. Aaron v. Aaron, 173 S.W.2d 310 (Tex. Civ.App., Texarkana 1943, writ ref'd

w. o. m.); Moore v. California-Western States Life Ins. Co., 67 S.W.2d 932 (Tex. Civ.App., Amarillo 1934, writ dism'd); Shaw v. Shaw, 28 S.W.2d 173 (Tex.Civ. App., Waco 1930, writ dism'd); Krenz v. Strohmeir, 177 S.W. 178 (Tex.Civ. App., Austin 1915, writ ref'd).

8. Huie, *supra* note 3, at 130 et seq.

America, 331 F.2d 346 (5th Cir. 1964); Kemp v. Metropolitan Life Ins. Co., 205 F. 2d 857 (5th Cir. 1953); National Maritime Union v. Augustine, 458 S.W.2d 832 (Tex. Civ.App., Beaumont 1970, no writ). On the other hand, if adequate provision is made for the surviving spouse a gift to a relative, through life insurance or otherwise, is not considered fraudulent. Krueger v. Williams, 163 Tex. 545, 359 S.W.2d 48 (1962); Brown v. Brown, 282 S.W.2d 90 (Tex.Civ.App., Waco 1955, writ ref'd n.r. e.); Jones v. Jones 146 S.W. 265 (Tex.Civ. App., San Antonio 1912, no writ).

■ All the cases above cited involved donees and beneficiaries related to the decedent. In such cases, as learned commentators have noted, the courts have considered objective factors in determining whether the situation was one in which the decedent might properly have made a gift of community funds, such as the relationship of the parties, whether special circumstances tended to justify the gift, and whether the community funds used for such purpose were reasonably in proportion to the community assets remaining.[9] Prof. Huie suggests that where life insurance is used as a means for distributing property at death to nondependent relatives, the principles of testamentary disposition of community property should apply, so that the beneficiary designation should be upheld only when reimbursement can be had from the husband's part of the community estate, and that gifts to the wife should also be considered on the question of constructive fraud.[10]

Although we have found no direct precedent dealing with application of the constructive fraud concept to an unrelated donee or beneficiary, the reasons for protecting the widow's interest against appropriation of community funds for relatives of the husband, such as a mother, sister or child of an earlier marriage, have even greater force when the beneficiary is entirely unrelated.[11] Persons outside the family do not ordinarily receive substantial gifts from donors in the modest circumstances of the deceased husband here. Neither are unrelated friends normally named as beneficiaries in life insurance contracts, which are designed primarily for protection of dependents on death of the insured by payment of debts and expenses and compensation for loss of support. Warthan v. Haynes, 155 Tex. 413, 288 S. W.2d 481 (1956). In our view, a husband's use of jointly owned funds to provide life insurance benefits to someone outside the family is so extraordinary as to raise a strong inference of misappropriation of the wife's interest in the community property. Consequently, we hold that purchase of life insurance with community funds for benefit of an unrelated person is constructively fraudulent in the absence of special justifying circumstances.

■■ Under this holding the widow establishes constructive fraud prima facie by proof that life insurance was purchased with community funds for the benefit of an unrelated person, and the beneficiary then has the burden to justify such use of community funds. What special circumstances would justify designation of an unrelated beneficiary cannot properly be determined in this case. All we know from the agreed statement about the relationship of the

---

9. Johanson, Revocable Trusts and Community Property, 47 Tex.L.Rev. 537, 568 (1969); 1 Oakes, Speer's Marital Rights in Texas, 4th Ed. § 434 at 642 (1961); de Funiak, Principles of Community Property, § 123 at 305 (1971). This passage from de Funiak, as it appears in an earlier edition, is quoted with approval in support of the decision in Kemp v. Metropolitan Life Ins. Co., 205 F.2d 857 (5th Cir. 1953).

10. *Supra* note 3, at 145 et seq.

11. Johanson, *supra* note 9, at 568, citing cases in which gifts to mistresses have been declared fraudulent as against the wife. See Roberson v. Roberson, 420 S.W.2d 495 (Tex.Civ.App., Houston 14th Dist.1967, writ ref'd n. r. e.); Watson v. Harris, 61 Tex.Civ.App. 263, 130 S.W. 237 (Austin 1910, no writ).

beneficiary to the insured is that they had been acquainted since 1963 and their friendship continued until the insured's death. This relationship does not support a substantial benefit to the unrelated friend from funds owned in common by the husband and wife. Neither can the friend's recovery of the entire proceeds be justified as equivalent to testamentary disposition of the insured's half of the community. No compensating benefits were provided by will for the widow, and although the agreed statement mentions "insurance policies," it does not disclose the amount or beneficiary of any policy other than the certificate in question. In the absence of any proof of these matters, we hold that the trial court was correct in awarding to the widow half the insurance proceeds[12] on the ground that the change of beneficiary from her to appellant Givens was an act of constructive fraud.

We do not reach the question of whether the insurance company would have been protected against liability to Edna Morris if it had paid the entire proceeds under the terms of the policy to Givens as beneficiary. In the trial court Edna made her claim against Givens rather than against the insurance company, and we hold that the facts recited in the agreed statement support that claim.

■ Appellant Givens complains that the trial court erred in making findings of fact when the parties had stipulated that all the facts upon which the case was to be decided were contained in the agreed statement. Since her brief fails to specify the particular findings alleged to be inconsistent with the agreed statement, we are not required to consider this point. Our judgment is not based on any facts other than those contained in the agreed statement. We regard the recitation of "constructive fraud" in the judgment as a conclusion of law, in which we concur for the reasons stated.

■ Appellant Givens also complains of the trial court's rulings denying her claim for the statutory penalty and attorney's fee and granting the insurance company relief on its bill of interpleader. These points are overruled, because the insurance company never denied its liability for the proceeds and we find that it had reasonable ground for a good faith belief that it might be exposed to double liability.

In this connection the sequence of events is material. On June 22 Walter Morris died. On June 30 counsel for appellee Edna Morris wrote the company a letter claiming the entire policy proceeds. On July 20 her counsel submitted proof of death on the forms provided and advised that she contended that although the designated beneficiary was a "friend," the premiums paid for the policy were community property and she was entitled to the proceeds because use of the community funds to pay the premiums was in fraud of her rights. On July 30 counsel for appellant Givens wrote to the company's attorney enclosing another proof of death and claiming the entire proceeds for Givens as beneficiary. On September 9 the insurance company filed the petition for interpleader and paid the proceeds into court. The petition acknowledges that death benefits in the amount of $4,000 were payable, and nothing in the stipulation indicates that it ever denied liability for this amount.

Appellant bases her claim for penalty and attorney's fee on the statute authoriz-

12. Apparently the interest of the surviving spouse is limited to half the proceeds on the theory that the insured may dispose of his interest without limitation, as he can by will. Aaron v. Aaron, 173 S.W. 2d 310 (Tex.Civ.App., Texarkana 1943, writ ref'd w. o. m.); Huie, *supra* note 3, at 137; Comment, The Community Life Insurance Policy, 18 Baylor L.Rev. 627, at 631 (1966). A question may be raised concerning the decedent's half as well as if survivor would otherwise have the whole burden of community debts, but that question is not before us.

ing such recovery if the insurer fails to pay within thirty days after demand.[13] Under this statute the courts have held that if an insurer admits liability but has reasonable grounds for anticipating rival claims and in good faith declines to pay the named beneficiary and deposits the money into court to be paid to the rightful person as determined by the court, it is not liable for more than the face amount of the policy. Murray v. Bankers Life Company, 299 S.W.2d 730 (Tex.Civ.App., Fort Worth 1957, writ ref'd). When these circumstances exist, failure to pay the money into court within thirty days after demand does not render the insurer liable for the statutory penalty and attorney's fee. Franklin Life Ins. Co. v. Greer, 219 S.W.2d 137 (Tex.Civ.App., Texarkana 1949, reversed on other grounds, but this point approved, in Greer v. Franklin Life Ins. Co., 148 Tex. 166, 221 S.W.2d 857).

■ The same principles which determine whether an insurance company is excused from payment of the statutory penalty and attorney's fee also determine whether it is entitled to interplead and recover its own attorney's fee. Interpleader is authorized by Texas Rules of Civil Procedure, rule 43 when rival claims against plaintiff "are such that the plaintiff is or may be exposed to double or multiple liability." The test of the right of the stakeholder to recover its attorney's fee from the fund is whether its failure to pay one claimant or the other is in good faith, based on a reasonable doubt either of fact or of law as to which is entitled to the fund. Drane v. Jefferson Standard Life Ins. Co., 139 Tex. 101, 161 S.W.2d 1057 (1942); Employers' Casualty Co. v. Rockwall County, 120 Tex. 441, 35 S.W.2d 690, 693 (1931); Wilke v. Finn, 39 S.W.2d 836 (Tex.Com.App.1931).

■ Appellant contends that the insurance company could not have been exposed to double liability because Edna Morris had no claim against it even on establishing her claim of constructive fraud. Appellant argues that under the Family Code,[14] the policy which was held in the name of Walter Morris was presumed to be within his sole management, control and disposition, and the insurance company as a third party dealing with Morris, was entitled to rely on Morris' authority to deal with it, so long as it had no notice of Mor-

13. Tex.Ins.Code art. 3.62 (1963):
"In all cases where a loss occurs and the life insurance company, or accident insurance company, or life and accident, health and accident, or life, health and accident insurance company liable therefor shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve (12%) per cent damages on the amount of such loss together with reasonable attorney fees for the prosecution and collection of such loss. Such attorney fee shall be taxed as a part of the costs in the case."

14. Tex.Fam.Code § 5.24:
"Presumption
(a) During marriage, property is presumed to be subject to the sole management, control, and disposition of a spouse if it is held in his or her name, as shown by muniment, contract, deposit of funds, or other evidence of ownership, or if it is in his or her possession and is not subject to such evidence of ownership.
(b) A third person dealing with a spouse is entitled to rely (as against the other spouse or anyone claiming from that spouse) on that spouse's authority to deal with the property if:
(1) the property is presumed to be subject to the sole management, control, and disposition of the spouse; and
(2) the person dealing with the spouse:
(A) is not a party to a fraud upon the other spouse or another person; and
(B) does not have notice of the spouse's lack of authority. * * *"
This section is a reenactment with some modifications of former Tex.Rev.Civ.Stat. art. 4622 (1925), as amended by Tex. Laws 1967, Ch. 309, at 738, which became effective January, 1968, before Morris died, but after he named Givens as beneficiary.

ris' lack of authority and was not a party to a fraud upon Mrs. Morris.

We cannot say that this statutory presumption so clearly protected the insurance company against any claim by Mrs. Morris that the interpleader was filed in bad faith. The company had reason for doubt on that point. After two letters from her counsel claiming all the proceeds, several questions may have occurred to the company, such as whether the company was entitled to rely on the statutory presumption after death of the insured and notice of the widow's adverse claim. We need not now determine how those questions should be decided. Even if we should conclude that the statute would have provided a good defense if the company had paid the beneficiary, and the widow had established her claim of constructive fraud in a suit against the company, our hindsight ought not to deprive the company of its right to interplead. The remedy of interpleader would be of little value if it were unavailable to a stakeholder who is later found not to be liable to one of the claimants, since the existence of that liability is the very matter which the interpleader action is brought to determine. Under the stipulated facts we hold that the company was a stakeholder and was properly allowed its attorney's fee on depositing the funds in court. Hartman v. Crain, 398 S.W.2d 387 (Tex.Civ.App., Houston 1966, no writ).

■ Appellant Givens contends further that she should be awarded the penalty and attorney's fee and that the company's claim for interpleader relief should be denied because it refused to accept the offer in her demand letter of July 30, 1970 "to indemnify Girard Life Insurance Company of America, by adequate indemnity bond or otherwise, against liability to Edna P. Morris by reason of the claim of Edna P. Morris in connection with the above Group Policy and Certificate, with such indemnity agreement to be accepted and consummated by and simultaneously with your delivery to me of the claimed proceeds." This con-

tention has some support in the opinion of this court in Rio Grande Nat. Life Ins. Co. v. Schmidt, 292 S.W.2d 864 (Tex.Civ.App., Dallas 1956, no writ). In that case, as an alternative ground of affirming the trial court's judgment denying interpleader relief, the court said that testimony of nonacceptance of an offer of indemnity had a bearing on the insurer's good faith in seeking interpleader relief. We do not think the *Schmidt* opinion should control here. Indemnity in this situation is a matter of contract, and in our view no one should be deprived of legal remedies because he is unwilling to make such a contract. Although the holder of a fund subject to competing claims may, if he chooses, protect himself by accepting an offer of indemnity by one of the claimants against liability to the other, or may himself offer to accept such an indemnity instead of interpleading, we hold that his failure to accept such an offer does not affect his right to interplead, and anything to the contrary in *Schmidt* is overruled.

■ Finally, we consider appellant's contention that the trial court erred in taxing costs against her, including the attorney's fee allowed to the insurance company for its interpleader. Tex.R.Civ.P. 131 provides for recovery of costs by the successful party. In the trial court the successful party was appellee Morris, who recovered on her pleaded claim to half the proceeds as against appellant Givens' claim to the entire fund. Since we affirm that judgment, this contention is overruled.

Affirmed.

## ON MOTION FOR REHEARING

■ On motion for rehearing appellant Givens contends that the attorney's fee allowed the insurance company for its interpleader should be taken out of the fund and not taxed against her as costs. We overrule this contention on authority of decisions holding that although the interpleading party is entitled to have his attor-

ney's fee deducted from the fund, the ultimate burden as between the rival claimants should fall on the party whose unsuccessful claim rendered the interpleader necessary.[15]

Overruled.

15. Means v. Porter, 216 S.W.2d 269 (Tex. Civ.App., Eastland 1949, writ ref'd n. r. e.); Comer v. Farrell, 48 S.W.2d 452 (Tex.Civ.App., Dallas 1932, writ dism'd.); Chancellor v. Chancellor, 23 S.W.2d 761 (Tex.Civ.App., Fort Worth 1929, writ ref'd); Halloran v. Abilene State Bank, 15 S.W.2d 1056 (Tex.Civ. App., Eastland, 1929, no writ); Middleton v. Moore, 289 S.W. 1045 (Tex.Civ. App., Amarillo 1927, no writ).